Joseph Russell *v.* Samuel Buck.

A promise by one already legally liable for a debt, in consideration of such
liability, to pay, if waited on a certain time, creates no new liability.

A promise to pay the debt of another, if waited on a certain time, leaving
the debt to be enforced, during that time, against the debtor, is *nudum
pactum*.

A promise, by an indorser to an indorsee, in these words, "I hereby guar-
anty to said R. the *collection* and payment of the above described note,
and agree to pay the same on condition that said R. does not call on me
for payment till the 1st of May 1831," is not an absolute promise to pay. It
is, in legal effect, a promise that the indorsee shall use reasonable diligence
to collect the note of the maker; and, if he fails in such collection,
then the promissor will pay the same on demand, after 1st May 1831.

This was an action of assumpsit. The declaration contained
two counts. The instrument declared upon was without
date, and is recited in the second count. The first count was
as follows:

For that whereas, heretofore, to wit, on the 26th day of
June 1828, Amasa Gibson and Reuben C. Gibson made, ex-
ecuted and delivered to Buck & Bailey and Hand & Kenyon
their joint and several promissory note for $1915,13, pay-
able in one year from the date aforesaid, with interest, at the
Farmers' Bank, and expressed to be for value received, which
said note, on the day and year last aforesaid, was indorsed
and delivered by the said payees, Buck & Bailey and Hand
& Kenyon, to the plaintiff, for value received; by reason of
which said indorsement, the said defendant was, as one of the
said indorsers, liable on said note; and in consideration there-
of, and in consideration that plaintiff would not call on de-
fendant for the payment of said note, until the 1st · day of
May 1831, the defendant faithfully promised plaintiff to pay
him the contents of said note, provided plaintiff did not call
on defendant till the 1st day of May 1831; and the plaintiff
avers that he did not call on defendant until long after the
1st day of May 1831, to wit, until the 1st day of June
1831. Yet the defendant, notwithstanding said note, on the
1st day of May 1831, remained wholly unpaid, not regarding
his said promise and undertaking aforesaid, has ever neglect-
ed and refused to pay said note or any part thereof, and still
neglects and refuses, to the damage of the plaintiff four thou-
sand dollars.

Second count.

And for that whereas, the said Joseph Russell, on the 1st day of June 1829, held one other note of $1915,13, drawn and signed by said Amos B. Gibson and Reuben C. Gibson, for value received, and delivered the same to the said Buck & Bailey and Hand & Kenyon, to whom, or to whose order, the said note was payable in one year from date, which said note was indorsed by said Buck & Bailey and Hand & Kenyon to plaintiff, to wit, on the day and year last aforesaid, at Bridport, whereby the said defendant was liable, as one of the indorsers of said paper ; and the said Buck, being thus liable, to wit, on the day and year last aforesaid, made, signed, and delivered to plaintiff, a writing of the following tenor :   " Whereas, Buck & Bailey indorsed a note made by Am- "asa B. Gibson and Reuben C. Gibson for $1915,13, " dated June 26, 1828, and payable one year from " date, with interest, which note is now the property of " Joseph Russell ; now, therefore, I hereby guaranty to said " Russell the collection and payment of the above described " note, and engage to pay the same, on condition that said " Russell does not call on me for payment till the first day " of May 1831." And the plaintiff avers, that neither the said Amasa B. Gibson, nor Reuben C. Gibson, nor any other person, has ever paid said note, or any part thereof ; and the plaintiff says that he did not call on said defendant till the 1st day of May 1831, agreeably to the above condition Yet the defendant, not regarding, &c.

The defendant pleaded the general issue, and the statute of limitations.

The note mentioned in the declaration was offered in evidence by the plaintiff, and was as follows :

" $1915,13. One year from date we jointly and severally promise to pay to the order of Buck & Bailey and Hand & Kenyon, at the Farmers' Bank, nineteen hundred and fifteen dollars thirteen cents, value received, with interest. Troy, 26th June, 1828.

(Signed)   Amasa B. Gibson.<br>Reuben C. Gibson."

Which note was indorsed on the back,

" Buck & Bailey."
" Hand & Kenyon."

To prove the execution of the endorsement of Buck & Bailey, on the back of said note, the plaintiff introduced and proved the instrument declared upon, and gave the same in evidence, it being admitted to have been executed by the defendant. The plaintiff insisted that the said contract was sufficient evidence to entitle him to recover, and thereupon rested his case.

The defendant moved for a nonsuit, on the ground,

1. That the proof did not support the declaration, both as it respected the contract and the consideration alleged.

2. That no presentment and notice of non-payment had been shown, and the instrument produced was not a waiver of these so as to hold an indorser, unless plaintiff showed that he had made the waiver with a knowledge that there had been no presentment and notice.

3. That, admitting these points were not tenable, the statute of limitations had run, as the instrument shown in evidence was void, for want of consideration, as an independent contract, and therefore was only an admission from the time it was made, and the plaintiff must show it made six years before suit commenced.

The court decided that the evidence was sufficient to support the declaration, and would maintain the action on the part of the plaintiff, and denied the motion for a nonsuit.

The defendant then proved, that on the 29th day of Jan. A.D. 1828, Amasa B. Gibson, who was a merchant in Crown Point, in the state of New York, sent his clerk to the store of Buck & Bailey, in the same town, with a blank piece of paper to Bailey to indorse for his accommodation, which Bailey refused to do ; that about two hours after, Gibson himself came to the store of Buck & Bailey, and urged Bailey to indorse the company name of Buck & Bailey on a blank piece of paper, to enable Gibson to draw 800 or 900 dollars from one of the banks ; that Bailey objected to doing business in that way ; that Gibson pressed him and finally drew up and gave him a memorandum as follows : " Re-
" ceived of Buck & Bailey their indorsement on a blank to
" be filled up with a note, not to exceed $1000, at one of the
" banks. Crown Point, 29th Jan. 1828. (Signed) Amasa
" B. Gibson." Upon which Bailey put the name of " Buck and Bailey" to the blank piece of paper ; that the note in

question was filled up upon that paper ; that Russell and Hall were then merchants in Troy ; that Buck lived in Bridport, Vermont, and was in partnership with Bailey in mercantile and lumbering business, which was carried on at Crown Point, where Bailey, who was the acting partner, resided ; that Buck was not present when the indorsement was made, and it did not appear that he had knowledge thereof ; that Bailey had no authority to make the indorsement of the company name in that manner, never having done so before, except in the business of the company, and that the company received no consideration whatever for the indorsement.

The defendant insisted that the note having been made fraudulently as to the defendant, and indorsed without consideration, the plaintiff must show that he paid value for it and was a *bona fide* holder, before he could recover on the special contract declared on ; that the writing given by the defendant did not bind him ; at least, unless the plaintiff showed it was given by defendant with a knowledge of the facts in relation to the note.

The court decided that the facts shown by the defendant constituted no defence, and that plaintiff had a right to recover, whereupon a verdict was taken by consent for the plaintiff, for the amount of the note, subject to the opinion of the supreme court.

*A. C. Hand* and *S. S. Phelps*, for defendant.

The transaction in question may be viewed in two aspects :

1. The note and indorsement may be considered the principal ground of the claim, and the subsequent paper a mere recognition or confirmation of the act of the copartner in making the indorsement.

In this view the action should be upon the indorsement, and the other instrument should be used as evidence merely to rebut the defence.

This course was not taken by the plaintiffs, because, in this view of the case, the action is barred by the statute of limitations.

2. The subsequent paper may be regarded as a substantive contract, founded on the original indebtedness, as its con-

sideration, and declared on as the principal ground of re-covery.

This is the course taken in the present case.

This distinction is radically important and ought not to be lost sight of.

I. The first objection to the plaintiff's proof is on the ground of variance, for,

1. The undertaking is not to pay absolutely, but to pay if the parties, primarily liable, did not.

2. The consideration proved, if any be proved, varies from that alleged.

The consideration proved must correspond with that alleged.

If it be more or less, the variance is fatal.

II. The plaintiff cannot recover, without proving demand and notice to the other indorsers, and also due diligence in collecting of the other parties.

This point depends upon the construction given to the writing.

III. The contract declared on is without consideration, and cannot be enforced.

Two considerations are relied on :

First. The giving of time.

Second. The original indebtedness.

1. As to the first.

The paper does not prove it. On the face of the paper the delay is a mere condition or qualification of the promise.

An agreement, on the part of the plaintiff, to give time, would constitute a good consideration; but there was no evidence that the plaintiff was bound directly or indirectly.

The promise, if binding at all, must be binding when made; and *must afford a mutual remedy.*

After all, the delay constitutes no consideration, if there be no debt to be forborne.

Further, the indebtedness is alleged in the declaration as constituting a part of the consideration in the first count and the entire consideration in the second ; and must, therefore, be shown, to sustain either count.

2. As to the original indebtedness :

It is evident that the defendant was not originally liable, by reason of the indorsement; for,

1. It was obtained by Gibson by fraud.

2. Bailey had no authority to make it in behalf of the partnership.

The plaintiff could not recover upon it, except under special circumstances to be shown by him ; that is to say, without showing a valuable consideration originally advanced upon the credit of the indorsement.

By the law of New York, it would not be enough to have received the note either as collateral security or even in payment of a precedent debt.

Upon the authority of *Heath* v. *Sansom et al.* 22 Com. Law Rep. 78, the defendant showed enough to defeat an action on the note, unless the plaintiff showed special grounds to entitle him to recover.

If, then, he showed enough to defeat a recovery upon the indorsement, unless for special reasons not shown by the plaintiff, has he not *prima facie* disproved the consideration ?

There can be no difference between sustaining the right of recovery on the indorsement and sustaining the consideration in this case. They are identically the same.

The proof of consideration derives no aid from the promise itself.

To argue from the fact that the promise was made to prove a consideration, and then to urge the consideration as sustaining the promise, is reasoning in a circle.

The idea that the defendant stands on less advantageous footing, than if the suit had been upon the indorsement, arises from confounding the different views of the subject suggested in the outset.

It requires something more to give effect to this after promise, as a perfect and valid contract, than to give it effect as evidence merely of a previous indebtedness, and that something consists in a distinct substantive consideration to support it.

By adopting this course, the plaintiff has assumed the burthen of establishing his original debt, and that debt may be proved on the one hand, or disproved on the other, by

precisely the same evidence as would be required if the same thing had been put in issue by a different form of declaring.

If, then, the evidence, offered by the defendant, would entitle him to a verdict in a suit on the indorsement, it entitles him to a decision here that there was no indebtedness and no consideration for the promise.

Further, there is certainly nothing conclusive in this after promise, which should preclude the defendant from inquiring into the consideration upon which it was founded.

The utmost which can be claimed is, that the after promise affords evidence, so far as it goes, to countervail the defence. In this point of view its effect depends altogether upon the assumption, that the promise was made with full knowledge, on the part of the defendant, of the facts here relied on. *Rouse* v. *Redwood*, 1 Esp. Rep. 155. *Middlebury College* v. *Williamson*, 1 Vt. Rep. 212.

In this view of it, it was proper for the consideration of the jury, and should have been left to them, with instructions to give it effect, as they should find the facts as to the defendant's knowledge of the circumstances and his motives in making the promise.

There is in the case, as stated, sufficient to satisfy a jury that the promise was made in ignorance of the facts, especially if the plaintiff fail to give proof of a consideration paid for the note.

The suggestion that the after promise changed the burthen of proof is fallacious. The *onus probandi* is on the defendant, whether the suit is on the indorsement or the after promise.

In either case the defendant gives the same proof on his part, and the plaintiff either gives it in evidence in reply or relies on it as already in evidence. It is obvious that, whichever course is taken, the intrinsic effect of the evidence is the same. But the county court treated it as conclusive in this case, both as to the original indebtedness and the consideration necessary to sustain the action.

The burthen of proof, as to defendant's knowledge, is on the plaintiff, because, the promise or acknowledgment derives all its force from that source.

IV. With regard to the construction of the contract ;—

1. What was the intent of parties ?

There was no surrender of the note, nor discharge of the other parties, nor any remedy to the defendant.

2. The promise was collateral, if the indorsement remained in force. It does not extinguish the note, and may be given in evidence in an action on the indorsement.

3. The words, "guaranty the collection," show the understanding of the parties to have been that the note was to remain in force, and be pursued.

4. The effect of the contract cannot be varied by the form of the action.

There is no waiver of the rights of defendant as indorser. By the very terms of the guaranty plaintiff was bound to use due diligence.

5. If we suppose the paper to have been dated before the note became due, it was a mere affirmance of the act of defendant's partner. There would be no waiver, in that case, of any future right, but it would be presumed that diligence was to be used.

If we suppose it to have been subsequently dated, there is still no waiver of diligence, nor any admission of notice to the other indorsers.

6. The general rule as to waiver is not applicable here, because the question arises upon a special contract, and depends upon the *intent.*

If the defendant remains as indorser, he retains the rights of an indorser, so far as not intentionally relinquished.

A subsequent and collateral contract varies the original one, only so far as is expressed or may be fairly inferred.

*C. Linsley*, for plaintiff.

I. The contract offered in evidence, if made after the note was due, is sufficient evidence of a demand, protest and notice, if these be requisite in this case; and if made before the note fell due, it would dispense with notice, &c. The acknowledgment of liability on a bill or note, and promise to pay after it has fallen due, or a part payment, dispenses with the necessity of proof of demand, protest, &c. *Gibbon* v. *Coggon*, 2 Camp. R. 188. *Taylor* v. *Jones*, 2. do. 105. 7 Conn. R. 543. *Lundie* v. *Robertson*, 7 East's R. 231. *Hopes* v. *Alder*, 6 do. 16, note. *Rogers* v. *Stephens*, 2 Term R.

713.  Stark. Ev. 272.  3 Johns. R. 68, 71.  *Allen* v. *Rightmere*, 20, Johns. R. 365.

II.  The subsequent promise is also an admission that the bill was rightly drawn and signed with the partnership name. The time to make the objection was when called upon for payment. . Besides, the contract states that the note *was in- dorsed* by Buck & Bailey.  *Lundie* v. *Robertson*, 7 East's R. 231.

III.  But suppose the promise to have been made before the bill fell due, then it is a waiver of demand and notice to defendant.  The contract was, if the plaintiff would wait, the defendant would pay.  The reason for a notice is dispensed with. When time is asked, demand and notice are unnecessary.  2 Stark.Ev. 262, note.  *Leffingwell* v. *White,* 1 Johns.Cases, 99.

IV.  The facts shown by defendant, with regard to the bill being an accommodation bill, and indorsed in blank, would have constituted no defence in a suit on the bill, and cannot be available here.  Chitty on Bills, 28.

V.  It is difficult to see on what ground it can be argued that the proof does not support the declaration.  The first count, after setting forth the note, alleges that in consideration of Buck's liability on the note, and of the extension of the time, he promised to pay, &c.  That both these entered into the consideration is obvious.  But it is said it is not an absolute promise to pay, but is a guaranty.  A guaranty, as understood in the law, is an undertaking for another, when, independently of the guaranty, the guarantor would not be liable.— Here the defendant was originally liable, and was bound to pay the money presently.  When, therefore, he makes an arrangement for time with regard to himself, how can it be considered a guaranty ?  But the word "guaranty" is not used in its technical sense, and is controlled and its meaning ascertained by the following words, which amount to an absolute promise to pay, if time is given.  The true meaning of the contract is that Buck will *pay* the note, if Russell will give time.

Again, the second count sets forth the contract in terms, and if the legal inference should not be properly drawn, it is no ground of variance.  The contract, offered in evidence,

is like the one declared on, and it is no objection to the evidence that the legal inference is not correctly drawn from it. But that the proper legal inference *is* drawn is clearly true, if the contract amounts to a promise to pay.

VI. The writing declared on is evidence that Russell is a *bona fide* holder, for value. When Buck says "which note is now the property of Joseph Russell," it is an admission that Russell is a *bona fide* holder. Why call it his property, if he has no interest in it and is a mere stake-holder ? At all events, it is enough to put the burthen of proof upon Buck, to show that Russell is a mere man of straw, if it be so.— *Potter* v. *Bartlett,* 6 Vt. R. 248.

VII. But it is enough to maintain this suit, that Russell has waited the time stipulated in the contract. It is argued that this is *nudum pactum.* But it is to be observed, that the question is not whether it could be enforced while executory, but whether, after condition fulfilled by Russell, Buck can have the advantage of the delay, and now urge that the contract was not binding. The promise is conditional, and is to be absolute on the performance of the condition. Russell has performed the condition, and the obligation is thereby perfected against Buck.

COLLAMER, J.—The defendant, with his partner, was an indorser of a note of which the plaintiff was indorsee, and, as the declaration alleges, was liable for the debt ; and at some period, either before or after the note became due, the defendant executed to the plaintiff the paper now in question. And the inquiry is, what is the legal effect of that paper ?

It is to be borne in mind that this is not an action against the defendant *as indorser.* Had it been so, there probably would have been little difficulty with the case. This writing would have been evidence in confirmation of the defendant's liability. If given before the note was due, and viewed as an absolute promise, it would have waived all evidence of notice of non-payment. If given after the note was due, and considered as- an absolute promise to pay, on time, it would have waived all objection on account of the want of notice. Such has been repeatedly decided to be the legal effect of such a promise. The whole scope of the authorities, cited by the plaintiff, merely shows what is the effect of such a promise made by an indorser, when he is sued *as indorser.* This

tends strongly to show that such a promise has no legal effect but as ancillary, and in confirmation of his existing liability, and does not extinguish that liability and create any new and substantive ground of action. The plaintiff has permitted the statute of limitations to run on any claim he has on the defendant, *as indorser*, and now claims to recover of the defendant on this writing as a substantive, independent, legal and perfect ground of action. Can this be sustained?

To sustain an action on this writing, as a contract, it must have a legal consideration. If the consideration is, that the defendant was then liable, as indorser, and in consideration thereof, promised to pay, if waited on, then it is like any case where a man owes a note now due, or to become due in six months, and, in consideration thereof, promises to pay the same, if waited upon one year. This new promise creates no new legal liability. It leaves the note, the debt and the parties as they were before. Such a promise might, indeed, if seasonably made, affect the claim as to the statute of limitation, but would be no ground of action in itself. If the defendant was not liable as indorser, then he is to be treated like any other third person. Here it is to be observed, that the writing does not stipulate or imply, nor is it pretended that it was ever understood by the parties, that the plaintiff was to delay the collection of his debt from the maker of the note. In this category, treating the defendant as a third person, not liable until this promise, it is simply a promise to pay if he is himself waited on. Most clearly, a promise to pay the debt of another in a certain time, if so long waited on, leaving the debt to be enforced during all that time against the debtor, is *nudum pactum.* It is, therefore, extremely difficult, if not impossible, to view this writing as having any consideration as a substantive contract. It seems nothing more than a writing recognizing the plaintiff's liability, as indorser, and promising, *as such indorser*, to pay, if waited on, if the plaintiff did not collect of the makers. It therefore *created* no new liability but left the defendant still to be pursued, *as indorser*, and in that way only.

But even if we were satisfied as to the matter of consideration, we do not consider this an absolute promise of payment. It is generally true, that where one undertakes for something to be done by himself or another, it is considered as absolute

and unconditional. He must see it is done. But when he undertakes to do, provided the promisee shall do something, then his undertaking is always conditional, implying that the promisee shall use diligence and give notice of the result before action. In construing a contract, regard must be had to the subject matter, and the circumstances under which it was made, and all parts of the contract should have effect. This writing was made by an indorser to an indorsee, in relation to a note left in the hands of the indorsee in full effect. If the plaintiff could collect of the makers, that would be satisfactory to all, and was one thing he desired to effect. If he should not be able to collect of the maker, then he wanted pay of the indorsers. Now, under these circumstances, and for these purposes, was this writing made. After stating how the parties stood connected with the transaction, the promise is in these words : " Now, therefore, I hereby guaranty to said Russell the *collection* and payment of the above described note"— " and agree to pay the same, on condition that said Russell does not call on me for payment till the 1st day of May, 1831." All that part which guaranties the collection of the debt is clearly a separate clause, and relates to procuring pay of the makers. That clause which promises to pay it himself, amounts to this, that in case it is not collected of the makers, he would pay it himself, on demand, after May, 1831. To hold this an absolute promise of payment by the defendant, on being waited on, makes the former clause of the promise nugatory and unmeaning. That former part is, in effect, a promise that the plaintiff, with proper and reasonable diligence, will be able to collect of the makers. It amounts to a guaranty that the note is collectable with reasonable diligence. *Foster* v. *Barney,* 3 Vt. R. 60. *Sage* v. *Wilcox,* 6 Conn, R. 81, And for this purpose the note was left in force, and in the plaintiff's hands. The remainder of the promise is, if the plaintiff fails to collect of the makers, after reasonable diligence, then the defendant will pay, after May 1, 1831. Such we consider the clear intent for which this writing was given and received, such is its meaning, and such, even if it

has good consideration, is its legal effect, but it is not so declared on.

Judgment reversed.

BENNETT, J. dissenting.

The principles of this case, as well as the case itself, being somewhat important, and as I cannot concur in the opinion expressed by my brethren, I deem it proper to state the grounds of my dissent.

The declaration is upon the special contract set forth in the bill of exceptions.

The questions arising upon this bill of exceptions have been fully and ably discussed by the counsel, and some of them are not without considerable difficulty. The leading proposition sought to be established by the defendant's counsel is, that, from the facts detailed in the bill of exceptions, no action can be maintained on this contract, on the ground of its being *without consideration*. If this objection is well founded, it must be fatal to the action ; and whether it be well or ill founded, must depend upon the question whether the evidence detailed shows a legal claim in the plaintiff against the defendant as one of the indorsers of the note. If the defendant was legally liable, at the time of making this special promise, as one of the indorsers of the note, it would seem that there can be no good reason to question the validity of this contract as a *new, independent* and *substantive* agreement. It has long been settled, that where there has been a pre-existing obligation, which has become inoperative by some positive law, (as in the case of debts barred by the statute of limitation, debts contracted by infants and debts discharged by insolvent laws,) this forms a sufficient basis for an *express* and effective promise.

It is believed to be the law, that in all such cases, where there is an *express* promise, it *may* be declared upon as the *substantive* cause of action. The new promise springs out of, and is supported by the original consideration, and the moral obligation uniting itself with the new promise, makes what Lord Mansfield calls, in the case of *Trueman* v. *Fenton*, 2 Cowp. R. 544, "a new undertaking and agreement." In cases where the new promise is *conditional*, and where the promise is to *an executor* to pay a debt due his testator, in his life time, it may well be inquired whether the declaration

*must* not be on the new promise. Chitty on Con. 654.—
*Short* v. *McCarthy*, 3 B. & A. Reports, 626. In *Depuy* v.
*Swart*, 3 Wendell's R. 135, it was held that a promise to
pay a debt, discharged under the insolvent laws of New
York, was a *new* contract, and that a suit on such contract
could only be brought in the name of the person with whom
it was made, and that the note, given for the original debt,
had no connection with the suit, further than as furnishing a
consideration for the new promise. On this subject I would
refer to *Dean* v. *Crane*, 1 Salk. 28. *Hickman* v. *Walker*,
Willes' R. 27. *Little* v. *Blunt*, 9 Pick. R. 491. *Levy* v.
*Cadet*, 17 Sarg. and R. Rep. 116. *Longdale* v. *Brown*, 4
Wash. C. C. R. 148. *Bell* v. *Morrison*, 1 Peters' R. 317;
and *Jones* v. *Moore*, 5 Binney's R. 576, where chief justice
Tilghman, with his usual ability, has entered into an elabo-
rate examination of this subject. If debts barred by the stat-
utes of limitations, discharged by insolvent laws, and debts
of infants not for necessaries, furnish a sufficient basis for the
consideration of a *new* and *effective* express promise, as a
*substantive* ground of action, it would seem to follow, *a for-
tiori*, that the existence of a debt, where the promisor had
not been released from either the legal or moral obligation of
payment, might have the same effect. But this point is not
without authority. In *Watson* v. *Turner*, Bull. N. P. 147,
it was adjudged that the overseers of the poor were bound
by a *mere subsequent* express promise to pay an apothecary's
bill for taking care of a pauper, and that such promise was
not *nudum pactum*. This case rests upon the ground that,
in England, a legal obligation is imposed upon the overseer,
personally, to provide for the poor. This formed the basis
of the subsequent promise. See also *Church* v. *Church*, T.
Raym. R. 260, and Pow. on Con. 351. That a legal obliga-
tion alone is a good consideration for a promise, is fully ad-
mitted in *Cook* v. *Bradley*, 7 Conn. R. 62, in which Dag-
gett, J., reviews the authorities at length. *Mills* v. *Wyman*,
3 Pick. R. 217. See also *Warner* v. *Booge*, 15 Johns. R.
233. As to the validity of the *subsequent* promise, it can
make no difference whether the *prior* legal obligation arose
from an express promise, or from one implied in law.

In *Moar* v. *Wright*, 1 Vt. R. 58, in which the distinctions
are marked with great accuracy, it was held that a promise

ADDISON,
January,
1839.
─────
Russell
v.
Buck.

to the assignee to pay a debt which had been assigned to him for a valuable consideration was not *nudum pactum.* It is well said in that case, that "the obligation of the debtor to the assignee is more than a mere *moral* duty ; it is, at least, an obligation binding in equity." Every legal obligation necessarily involves the moral duty of discharging such obligation.

In the case under consideration, however, it seems that the promise of the defendant was induced by a new and an additional consideration, to wit, that he should not be called upon till 1st May, 1831. An agreement to forbear for a certain or reasonable time the collection of a *well founded* legal or equitable claim, is a sufficient consideration for the promise of *the debtor,* to pay the debt, as well as for that of a *third* person. No doubt, to render an agreement to forbear, and the forbearance of a claim, a sufficient consideration, it is essential that there should have been a well founded claim, or, as it is said in *Longridge* v. *Dorville,* 5 B. & A. Rep. 117, there must have been, at least, a doubtful right of action. It is admitted in the argument for the defendant, that if there is an agreement on the part of the plaintiff to give to the defendant time, there is a good consideration, provided there be a debt to be forborne. · It is, however, said that there is no evidence of an agreement on the part of the plaintiff to give time, and we have been referred to the case of *Lees* v. *Whitcomb,* 5 Bingham's Rep. 34, to sustain the position. The evidence in that case, to support the declaration, was a written extract, as follows : " I hereby agree to *remain* with Mrs. Lees two years from the date hereof, for the purpose of learning the business of a dressmaker." Best, C. J. says, " there is no obligation by the terms of the contract upon the defendant to serve the plaintiff ; her engagement is merely to remain with her for two years ; and there is no agreement on the part of the plaintiff to insure to the defendant instruction in the business." This certainly cannot sustain the position that there was no agreement in the case before us, on the part of the plaintiff, to give time. If the defendant in the case in Bingham did not agree to *serve* the plaintiff, but simply *remain* with her for two years, it would indeed be preposterous to infer, from the

nature of the case, an agreement on the part of the plaintiff to give instruction in a business in which the defendant had not agreed to serve. The usual form of a declaration on an agreement to give time, after setting out the indebtedness, is, "in consideration whereof, and that the plaintiff, at the special instance and request of the defendant, would forbear and give time, &c. the defendant promised, &c. ;" and then the forbearance is averred.

Forbearance of the collection of a debt by the plaintiff, *at the request* of the defendant, is a good consideration for a promise. 2 Chitty Pl. 83. 1 Saunders' R. 211, a.n. 2. It is not necessary in this case that time should have been given to the *makers* of the note. If the defendant, Buck, was liable as indorser, the plaintiff, by the forbearance, has been delayed in his remedy, not only as to Buck, but also as to the other indorsers, and, it is to be presumed that Buck has been benefitted ; so that both the ordinary grounds, upon which a sufficient consideration rests, concur. In *Lent et al.* v. *Padelford*, 10 Mass. Rep. 237, it is expressly determined that a declaration alleging, that in consideration that the plaintiffs would delay the service of their execution, the defendants promised, &c. is sufficient, it being averred that they *did* delay.

In the case of *Breed* v. *Hillhouse*, 7 Conn. Rep. 523, the declaration states that in consideration that the plaintiff would delay the collection of a certain note for a given time, *and of the promise of the plaintiff to forbear the same for that time,* the defendant promised, &c. The promise or guaranty was in these words: "I hereby guaranty the payment of this note within four years from this date." The declaration averred the delay to collect the note of the maker for the time specified. The court say, "the acceptance of the guaranty by the plaintiff, and his consequent forbearance, prove the agreement to forbear, and are incompatible with any other supposition." Suppose a lease is executed by A. to B. in which it is provided that B. shall pay A. certain quarterly rents. The lease is not executed on the part of B., but he accepts of it, and goes into possession. Would not this furnish evidence against B. of an agreement to pay the rent as stipulated in the lease ?

If the facts detailed in the bill of exceptions do not show

that the defendant was liable to the plaintiff, as one of the indorsers of the note, it must be admitted that this agreement is *nudum pactum*; and though the court have decided that the defendant is entitled to a new trial on the ground of variance between the declaration and the evidence, leaving the question, as to the binding effect of this new promise, undecided; still as the question has been argued at length and is the important question in this case, I would suggest a few reflections as they occured to me on the trial.

The written contract of the defendant being without date, and no evidence in the bill of exceptions of the time when, in fact, it was executed, whether before or after the note became payable, the time when it was executed must be a matter of inference; and, perhaps, it will make no essential difference in the defendant's liability. If the indorser of a note, before it becomes payable, agree with the holder, that, in consideration of time being given, he will pay the note, this, no doubt, would be a waiver of a demand and notice, and the indorser, on this evidence, becomes absolutely liable on the new contract; or, if declared against as indorser in common form, he would be chargeable on the ground of *waiver* of demand and notice. *Norton* v. *Lewis*, 2 Conn. Rep. 478. *Leffingwell* v. *White*, 1. Johns. Cases, 99.

It has been frequently adjudged, that if, after a bill has become due, the indorsee calls upon the indorser for payment, and the latter promises to pay it, this evidence is sufficient to warrant the jury in finding a demand of payment, and notice to the indorser of the dishonor of the bill. *Horford* v. *Wilson*, 1 Taunton's Rep. 12. *Gibbon* v. *Coggon*, 2 Camp. Rep. 188. *Pierson* v. *Hooker*, 3 Johns. Rep. 67. *Lundie* v. *Robertson*, 7 East's Rep. 231. *Potter* v. *Rayworth*, 13 East's Rep. 417. *Breed* v. *Hillhouse*, 7 Conn. Rep. 528. Bayley on Bills, 479. No doubt the effect of this evidence may be neutralized, by the indorser's showing that in point of fact there was no demand and notice; but if the promise is made by the indorser, after being discharged by want of notice with a full knowledge of all the *material facts*, it may be well inquired whether this is not a waiver of such want of notice, and whether the party is not estopped from setting it up as a defence?

It is true, that in the case of *Trimble* v. *Thorne*, 16 Johns. Rep. 154, it is held that a promise to pay the note by an indorser, after due, is not *prima facie* an admission of presentment and notice ; but that it must also appear affirmatively that the indorser, at the time, knew it had not been presented and notice given. It is believed this case is opposed to the whole current of decisions, and establishes a rule of evidence, not supported upon principle or by authority.

It is said, that though the evidence furnished against Buck by this new promise, might, in ordinary cases, be sufficient, *per se*, to charge him as indorser, yet, in this case, the indorsement was obtained by the fraud of Gibson ; and that, therefore, the plaintiff can have no action against the indorsers without proof that he became possessed of the paper in the due course of business, and for a valuable consideration. It is undoubtedly true, that where a suspicion is cast upon the title of the holder of commercial paper, by evidence, showing it had got into circulation by fraud, it is incumbent upon the holder to show that he became possessed of it in the due course of business and for a valuable consideration ; otherwise he is not protected against the effect of the fraud. The question, however, may well be asked, whether in this case the rule, that the *onus* is cast upon the plaintiff, is not satisfied from the special facts in evidence ? The agreement of Buck recognizes in direct terms the indorsement by Buck & Bailey, and admits the note to be the *property of the plaintiff*; and shall Buck, after having induced a delay by his promise of payment to the plaintiff, be permitted to urge that the latter has not even, *prima facie*, a right to recover on this paper, without showing how he came by it ? No doubt, for the purpose of testing the question whether there is a debt to be forborne, so as to form the basis of a new promise, the rule should be the same as if the declaration was against Buck as indorser. If this suit had been on the indorsement, as against Buck, would the plaintiff, after the admissions in this writing, be compelled to go further, and show he paid value for it in the due course of business ? Is it not the effect of the admissions of Buck to dispense with this requisition ? If the evidence, in this particular, would, *per se*, be sufficient to sustain an action on the indorsement,

as against Buck, it must follow that it is sufficient to sustain the *consideration* for the new promise. To give effect to this agreement, so as to charge the defendant as indorser, does not require a consideration. It is, *per se*, an admission, *prima facie*, that every pre-requisite step, necessary to charge him on the indorsement had been taken. If then, this evidence shows a liability as indorser, it is not, it is conceived, arguing in a circle to make such liability the basis of a new and effective promise.

It was also urged on the trial that there was no liability on the defendant on his indorsement, on the ground that Bailey had no authority to make it in behalf of the partnership; but is this objection well founded?

It is a general rule, that one partner may bind his co-partner by accepting drawing, or indorsing a bill of exchange, or by making or indorsing a promissory note in the name and behalf of the firm. The bill of exceptions does not furnish any evidence of notice to the plaintiff that it was not indorsed on the partnership account, and for their use.

Third persons are not bound to inquire whether the partner indorsing a note was acting on the partnership account. The presumption is, that he was, and this is sufficient, unless the contrary be shown, or unless it be shown that the person taking the paper had notice or reason to believe that the partner, signing the paper in behalf of the firm, was acting on his own account. Besides, Buck, by his new promise, recognizes the indorsement made in behalf of the firm by the other partner.

Some other objections of minor importance were urged at the trial, in regard to the invalidity of this promise, but as the court have determined to grant a new trial on a single point, that is, on the ground of variance, leaving all other questions undecided, I might have well saved myself the labor of throwing out any suggestions on the principal question, though very fully argued at the bar, and necessarily connected with the final merits of the case. In the consideration of the question whether the promise given in evidence was an *absolute* one, or conditional, I shall, of course, assume the ground that it is a valid and effective promise, as it would seem to me to be idle to be debating the question whether this is in law an *absolute* or a *conditional* undertaking, and be, at the same time, of the opinion that it is *nudum pactum*. If it is an agree-

ment without consideration, it matters not whether it is *absolute* in its terms or *conditional*, it is fatal to the plaintiff's action.

In giving a construction to a contract, where the intention of the parties can be regarded as doubtful, it is proper, not only that we should have recourse to the whole contract, but also to the subject matter, and the circumstances, under which it was made, and the situation of the parties at the time. The defendant stands as indorser of the note; and if he has due notice of its presentment and dishonor, he becomes absolutely fixed with the payment by means of his indorsement. No further diligence is required of the indorsee, to attempt its collection of the makers. It would, indeed, be strange for the indorsee to give further time, and agree with this indorser to forbear to take the necessary steps to charge him, and thereby discharge the other indorsers, for the sake of obtaining from him a conditional promise to pay the note, in case the indorsee could not collect it of the makers. If the indorsers had become absolutely fixed by presentment and notice, it is equally improbable that the indorsee would have given time upon a *conditional* undertaking of this defendant, less beneficial to himself than the one he already had. Our experience of mankind shows us that men do not so act.

It is much more rational to suppose that the makers and, perhaps, the other indorsers, had become bankrupt or had absconded; and that this defendant was compelled to take the payment of this note upon himself; and that in this situation, as matter of favor, this indorsee should give him time, upon his agreeing to make payment at a given day. Such a supposition comports with our experience in business, whilst the idea of substituting a *conditional* liability, for one that was *absolute*, is in my view absurd, and contrary to the whole course of our experience. If there is any consideration for this new promise, and, for the purposes of this question, I assume that there is, it is a *new* and *distinct consideration, independent* of the liability of the makers of the note, and *moving between the immediate parties* to the new promise. It is the giving of time to the defendant upon his own liability, upon his agreeing to see such liability discharged upon a given day. Such agreements have always been considered in the light of original and *absolute* under-

takings, and not as *collateral* or *conditional* ones. See *Tomlinson* v. *Gill*, Amb. Rep. 330. *Williams* v. *Leper*, 3 Burr. Rep. 1886. Roberts on Frauds, 232, 237. 1 Saunders' Rep. 211, note 2; and *Leonard* v. *Vredenburgh*, 8 Johns. Rep. 39. It makes no difference that at the time this agreement was made, the note was left in the hands of the indorsee in full force against the makers. If the indorsee had collected it of the makers, in the meantime, it would no doubt have been satisfactory to all; but it is a *non sequitur*,that, because he might have done it, the contract of the indorser was conditional; and the indorsee bound to attempt its collection of the makers. Whenever a person undertakes to perform some act himself, or that a third person shall do it, the undertaking is absolute. The defendant guarantees the collection and payment of the note to the plaintiff, and agrees to pay the same, if not "called on before the 1st of May, 1831." In giving a construction to this contract, it is important to keep in mind the fact that it is based upon a new consideration, moving between the immediate parties to this suit, and disconnected with the original note, except so far as it serves as a basis for a consideration for this new promise. Though the contract commences with the words, "I hereby guaranty the collection of said note;" and though these words, standing alone, may be appropriate to express a collateral undertaking, yet when the contract closes up, by the defendant's agreeing to pay the note, if not called on before a given day, and upon a *new* and *independent* consideration, I think, to hold this a collateral or conditional undertaking is at war with the intention of the parties and with adjudged cases. In the case of *Breed* v. *Hillhouse*, 7 Conn. Rep. the language of the contract was, "I hereby *guaranty* the payment of this note within four years from this date." The consideration of this promise was the giving of time to the maker of the note; at the end of which it would of course be in full effect against the maker; yet still this was held to be an absolute undertaking. In *Upham* v. *Prince*, 12 Mass. R. 15, a negotiable note was indorsed by the defendant who was the payee in these words: "I *guaranty* the payment of this note within six months;" and the court say, "the defendant's engagement amounts to a promise that the note should *at all events*

be paid within that time." In *Allen* v. *Rightmyre,* 20 Johns. Rep. 365, the payee of a negotiable note indorsed it in these words: "For value received, I sell, assign and *guaranty* to the plaintiff or bearer the payment of the within note ;" and the court say that " this is not a conditional undertaking to pay, if the maker does not; but is *absolute,* that the maker shall pay the note when due, or that the defendant will himself pay it."

In *Williams* v. *Granger,* 4 Day's R. 444. the defendant, after *guarantying* to the plaintiff that one Phelps, the maker of the note, then was and would continue to be, until the day of payment mentioned therein, of *sufficient responsibility* to pay the same, proceeds, "and I further engage with said Williams, the promisee, that if the moneys mentioned in said note are not paid by the 5th of September, 1807, I will, on that day, advance the same to him, taking and holding the note as my own, at my sole risk." The suit on this contract was defended on the ground that Phelps was, and continued to be, up to the commencement of the suit, a man of *abundant property,* that Williams had commenced no suit against him, and had made no demand of him for payment, or given the defendant notice of non-payment. The court say this is a new, separate, and independent contract between Granger and Williams, relative to the note, though it begins with a warranty of the responsibility of Phelps, and that no act was required on the part of Williams for obtaining the money of Phelps. He was merely bound to receive it, if offered, and, on failure of payment, Granger's contract became absolute on that day, and no notice was necessary to render Granger liable." If this contract is but a conditional undertaking to pay the debt of the Gibsons, in case of their failure, then it is true there is a variance between the declaration and the evidence. The plaintiff, in such case, to charge the defendant, must show reasonable diligence to collect the note of the Gibsons, or special facts that would excuse the use of such diligence. I cannot, however, concede that this is the construction of the contract. The note became due in June, 1829, and it is rather to be presumed that this agreement of the defendant was made after there was a failure to pay the note, at maturity. Must the plaintiff

present a note that is past due to the makers, and give notice of the failure to pay, to charge the defendant on his contract ? Or shall he be required to institute a suit ? The defendant does not *guaranty* the *collection* and *payment* of the note by *the makers*, in direct terms ; but suppose he does by implication, does he not undertake absolutely that it shall at all events be paid ? And can there be any doubt when he adds, " and I agree to pay the same if not called'on by the plaintiff till a given day ?" In the case in 4 Day's R. it was clear that the first part of the contract was but a guaranty of the responsibility of the maker of the note, but when it was added that the defendant would, if the note was not paid by a given day, advance the money to the plaintiff to pay it, the court say, no diligence was required of the plaintiff to collect the note of the maker. The contract, in the case under consideration, was absolute. The defendant agreed, in direct and positive terms, with the plaintiff, to pay the note, on condition that the plaintiff would not call upon him till the 1st day of May, 1831 ; and where the parties have expressed the condition, upon which the defendant is to become liable, to superadd to this a further condition by implication, is, as I think, making a contract for the parties, and not construing one already made. If we regard the first part of the contract as an absolute undertaking, on the part of the defendant, for the payment of the note by the makers, we give effect to the whole contract. The latter part, in which the defendant agrees himself to pay the note, simply expresses in direct terms what would be his legal liability upon the failure of the makers to pay the note, limiting, however, the time when this liability to pay shall accrue. If this is not the legal construction of the contract, the latter clause in it is incompatible with the former, unless we superadd to the latter a condition which the parties have not done. In the case of *Foster* v. *Barney*, 3 Vt. R.60, the words of the contract were, "I warrant the within note due and *collectable*." The word *collectable* necessarily imports some action by the holder to determine whether the warranty shall prove false, and the judge, who gives the opinion of the court, says, that to determine this the party must commence his suit and pursue it to final judgment and execution. It may well be held, in such a case, that there is an implied agreement that the party will use reasonable diligence in attempting the collection of the

note. The effect of such an agreement is not that the party undertakes that a third person shall perform some act, but that the holder shall be able to collect the note, and the use of due diligence is a duty which the law imposes.

The case of *Sage* v. *Wilcox*, 6 Conn. R. 81, seems to be somewhat opposed to the current of authorities. In that case the guaranty is in these words, "I hereby guaranty the payment of the within note, one year from this date, whether a suit is brought against the signer or not." It was held that this was not an absolute promise to pay the note at the end of the year, but was a conditional engagement, requiring, on the part of the holder, demand and notice. This case, it may be remarked, is entitled to very little weight as an authority. It was decided by four judges, two in favor of the decision, while the other two were opposed to it; and the judge, who gives the opinion of the court, says, "had the indorsement stipulated, as the one in *Williams* v. *Granger*, 4 Day, did, not for the ability of the maker only, but the advancement of the money on a day certain, the contract would have been *absolute.*" This case is evidently opposed to the case of *Breed* v. *Hillhouse*, which is decided by the unanimous opinion of the court, and, I think, to the whole current of authority. · The conclusion, then, to which I come, is, that the contract of the defendant is an absolute engagement on his part to pay the note on the 1st of May, 1831, provided he is not called on for payment before that time; and that it is declared on, according to its legal effect, and that no new trial should be granted on the ground of variance between the evidence and the declaration.