Leo Awotin, Appellant, v. Daniel M. Healy, Appellee.

Gen. No. 39,099.

Heard in the third division of this court for the first district at the October term, 1936. Opinion filed June 30, 1937. Rehearing denied July 12, 1937.

AUSTIN L. WYMAN, of Chicago, for appellant; DANIEL P. NAGLE, of Chicago, of counsel.

LITSINGER, HEALY, REID & BYE, of Chicago, for appellee.

Mr. Justice Hall delivered the opinion of the court.

This is an appeal from an order sustaining defendant's motion to dismiss the complaint filed in the cause. It is recited in the order that the motion was sustained "because plaintiff's claim was unenforceable under the Statute of Frauds."

The complaint consists of two counts. The first count, as amended, is as follows: "Plaintiff, from prior to year 1920 to approximately July 15, 1930, was a customer of the Atlas Exchange National Bank of Chicago, a national banking institution. Defendant, Daniel M. Healy, was president of said Atlas Exchange National Bank of Chicago during the same period of time. From time to time, during said period, plaintiff purchased of said Atlas Exchange National Bank of Chicago, divers bonds held by it as part of its own assets, in each case upon receipt of, and reliance upon, the written agreement of said Atlas Exchange National Bank of Chicago to repurchase said bonds at maturity. On November 1, 1929, plaintiff purchased from said Atlas Exchange National Bank of Chicago, $35,000 Par Value First National Company Collateral Trust Series 'C' First Mortgage Real Estate 5½% Gold Bonds at 98½% per cent of par, and at said time received a written agreement by said bank to repurchase [which agreement is not in issue here], and also, before making said purchase as an inducement to the making of said purchase, was promised by said Daniel M. Healy that he would repurchase said bonds at maturity at par and accrued interest, if the said bank did not repurchase the same, at which time the said Daniel M. Healy was the owner of 783 shares of capital stock of said bank, the entire capitalization of said bank consisting of 2,000 shares of stock, and had working control of said bank; by virtue of said sale, the bank made divers profits or commissions, which profits or commissions inured to the direct benefit of the said Daniel M.

Healy. Shortly prior to the purchase of said bonds, plaintiff went to another banking institution in Chicago to make a purchase of bonds in denominations not available at said Atlas Exchange National Bank of Chicago, and requested, as a condition to the making of such purchase, an agreement to repurchase. Said bank was also a national bank and its officers informed plaintiff that doubt existed as to the right of a national bank to enter into an agreement of repurchase. Plaintiff informed such officers that the Atlas Exchange National Bank of Chicago was selling bonds to plaintiff on the basis of such an agreement, and such officers referred plaintiff back to said Daniel M. Healy, as president, stating that he was a lawyer and would know what the law was. Plaintiff thereupon told said Daniel M. Healy of the fact of his conversation with said officers of said other bank, and the said Daniel M. Healy then stated to plaintiff: (1) that he had examined the National Banking Law as amended in 1927 and was satisfied that no doubt existed as to the right of a national bank to agree to repurchase securities sold; (2) that he had an opinion from the Comptroller of Currency of the United States to that effect. Said conversation with the said Daniel M. Healy last related, took place in the office of the said Healy at the said Atlas Exchange National Bank of Chicago, at the corner of Halsted and Taylor Streets, in Chicago, at the end of September or the early part of October, 1929. Being thus reassured, plaintiff purchased said bonds, all of said bonds being due and payable by their terms July 15, 1930. On or immediately after July 15, 1930, plaintiff presented said bonds to said Atlas Exchange National Bank of Chicago and to said Daniel M. Healy for repurchase, and was then and there informed by the said Daniel M. Healy: (a) that the maker of said bonds was short of funds but that the bonds would probably be taken care of shortly; (b)

that the Atlas Exchange National Bank of Chicago did not have the funds available with which to repurchase said bonds; (c) that he, said Healy, was liable on said agreement made by him to repurchase said bonds, but that his assets were largely tied up in said Atlas Exchange National Bank of Chicago, which then, or shortly thereafter, went into liquidation; (d) that he would, within the next three days, submit a list of mortgages of his own to be offered in exchange for said bonds. At the end of three days, said Daniel M. Healy called up and said he had not been able to furnish said list, but that he would do so within the next two or three days. Hearing nothing further from said Daniel M. Healy, plaintiff caused to be instituted in the courts of Cook County against said Atlas Exchange National Bank of Chicago, which, by various steps, reached the United States Supreme Court, where it was held that said agreement was ultra vires the bank. In said suit, the said Daniel M. Healy, as liquidator of the Atlas Exchange National Bank of Chicago, signed an affidavit in which he stated within approximately one year after the sale of said bonds to plaintiff, that any such agreement was ultra vires. By stipulation in said proceeding, entered into with the knowledge and consent of said Daniel M. Healy and without prejudice to the claim of the plaintiff, it was provided that said bonds might be sold at eleven cents on the dollar, the then market value, and such sale was effected, plaintiff realizing the sum of $3,850.00 therefrom. Said bonds, at the time of their purchase by plaintiff, have since been ascertained by plaintiff to have had a market value substantially less than 98½ cents on the dollar. Defendant failed and refused, and still does fail and refuse, to pay the claim of plaintiff in accordance with his promise to repurchase said bonds at maturity. Wherefore, plaintiff asks judgment for the sum of

$31,150.00, together with interest from July 15, 1930, at the statutory rate.''

The abstract recites that ''count 2 repeats all the allegations of the first count, and adds that said Daniel M. Healy was and is a lawyer, versed and skilled in the law; that plaintiff had no knowledge or information beyond that given by said Healy as to the legality of said contract by the said Atlas Exchange National Bank of Chicago; that the law is and was at the time of said purchase on or about November 1, 1929, that a national bank could not sell securities, except without recourse, and said Healy well knew, or should have known, of said law; that he occupied a fiduciary relationship towards the plaintiff in advising the plaintiff as to the law in selling securities under the circumstances alleged; that plaintiff relied on the advice of Healy and on the oral promise and on the written agreement of said bank, in making said purchase, and was thereby induced to buy the bonds upon such false representation by the said Healy as to the law; that the bank was in dire need of cash at the time it sold the bonds to plaintiff; that Healy was a large stockholder in the bank, and because of double liability, as well as because of his original stock investment, was vitally concerned with the success of the bank.''

The motion to dismiss is based upon the ground that the claim is unenforceable under the provisions of the Uniform Sales Act (ch. 121a, sec. 4, Illinois State Bar Stats. 1935, ¶ 7; Jones Ill. Stats. Ann. 121.08), and the Statute of Frauds and Perjuries (ch. 59, sec. 1, Illinois State Bar Stats. 1935, ¶ 1; Jones Ill. Stats. Ann. 55.01.)

Stripped of redundancy, the pertinent allegations in this complaint are that plaintiff purchased certain bonds from the Atlas Exchange National Bank, and ''at said time, received a written agreement by said bank to repurchase, and also, before making said purchase, as an inducement to the making of said pur-

chase, was promised by said Daniel M. Healy that he would repurchase the said bonds at maturity at par and accrued interest, if the said bank did not repurchase the same." Then follows an allegation as to defendant Healy's large holdings of stock in the bank, and that by virtue of the sale to plaintiff, the bank would make large profits, which would be of direct benefit to Healy, and that Healy had then advised the plaintiff that the bank had the right and power to enter into the agreement with plaintiff to repurchase the bonds, and that Healy gave his opinion to plaintiff as to the power of the bank from his, Healy's knowledge as a lawyer, and from an opinion which he had had on the subject from the Comptroller of Currency of the United States, to the effect that the bank had such power. Further, that thereafter and subsequent to July 15, 1930, when the bonds became due and payable, plaintiff presented the bonds to the bank and to Healy for repurchase, and that Healy again promised to repurchase the bonds, and acknowledged his liability to do so, and that thereafter plaintiff brought suit against the bank, based upon his agreement with the bank, and that this agreement was held to be ultra vires and beyond the power of the bank to make, by the Supreme Court of the United States.

The case of *Awotin v. Atlas Exchange National Bank* is reported in 295 U. S. 209, and in construing the contract between the plaintiff here and the Atlas Exchange National Bank, the Supreme Court said:

"Respondent, [the bank] by agreeing to repurchase the bonds at the same price petitioner had paid for them, plus their accrued interest, undertook to save petitioner harmless from all risk of loss on his purchase, as effectively as if it had indorsed the bonds without restriction or had guaranteed their payment at maturity."

Section 1 of chapter 59 of an act to revise the law with relation to frauds and perjuries, (Illinois State Bar Stats. 1935, ¶ 1; Jones Ill. Stats. Ann. 55.01) provides:

"That no action shall be brought . . . whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made upon consideration of marriage, or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

One of the first, and what appears to be a leading case on the question of the liability of a third person under an oral contract to pay the debt of another, is that of *Eddy v. Roberts,* 17 Ill. 505. In that case, one Williams had been engaged in cutting wood, and had employed hands for that purpose, and had made arrangements with plaintiffs to pay his hands out of plaintiffs' store, and had obtained credit with plaintiffs for goods, stating that "the debt would be good, for the wood would be theirs till they got their pay." Subsequently, the defendant in the case, who had bought out Williams, requested the plaintiffs to let the hands have goods on his defendant's account, and that plaintiffs refused to do so unless the debt of Williams was paid, and that thereupon defendant promised that if he would deliver the goods, as requested, on his, defendant's, account, that defendant would pay for the same, together with the debt of Williams, and that plaintiffs thereupon did accordingly allow these hands to have goods on defendant's account. The defense there, as here, was that the defendant was not liable

because the agreement to pay was not in writing, and the Supreme Court said:

"The statute of *frauds* and *perjuries* declares, 'that no action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, unless the promise or agreement, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereto by him lawfully authorized.' This is substantially like the English statute upon the same subject, and similar provisions exist, it is believed, in all of the United States. The plain object of the statute is to require higher and more certain evidence to charge a party, where he does not receive the substantial benefit of the transaction, and where another is primarily liable to pay the debt or discharge the duty; and thereby to afford greater security against the setting up of fraudulent demands, where the party sought to be charged is another than the real debtor, and whose debt or duty, on performance of the alleged contract by such third person, would be discharged. The decisions on this branch of the statute, both in England and the United States, are numerous, and, to a considerable extent, apparently contradictory, insomuch that any attempt to review and reconcile them would be a hopeless undertaking. It cannot be denied that courts in many instances, to prevent the successful interposition of the statute against apparently meritorious claims, and in the *particular case* to avoid a seeming wrong, have departed from the plain letter and spirit of the statute. Hard cases are said to make bad precedents, and, in our judgment, it is not only better in the general operation, but the imperative duty of the courts to hold, in all cases, to the statute *as it reads,* avoiding all nice, complicated or shadowy distinctions. By such a course the law is rendered more certain and uniform in

its administration; and principles, instead of mere cases, become the foundation of judicial decisions. The main question for inquiry under the statute is, whether the promise is an original and independent one, or whether it is subsidiary, collateral to, and dependent upon, the debt or liability of another?

"If another is primary, or principal debtor, and the relations of debtor and creditor remain unchanged, both as to the right and the remedy, and no trust is created by the transaction out of which the promise arises, such promise is in its nature collateral and not original. If the debt be paid, or duty performed, by him who is primarily liable, the incident, or collateral promise, is of no force for any purpose; there is nothing remaining upon which it can operate. Tested by these rules the contract alleged in the third count is void, if not in writing. The debt of Williams existed at the time of making the promise; Williams continued liable to the same extent as if the promise had not been made; the relations of debtor and creditor were in no manner changed; no remedy, pledge, or security was relinquished; and no trust devolved upon the defendant to execute, by reason of the transaction. *Chapin v. Lapham,* 20 Pick. 467; *Russell v. Bulk,* 11 Verm. 166; *Tileston v. Nettleton,* 6 Pick. 509; *Nelson v. Boynton,* 3 Met. 396; *Cahill v. Bigelow,* 18 Pick. 369; *Stone v. Symmes,* ibid. 467; *Durham v. Anledge,* 1 Strob. 5; *Carville v. Crane,* 5 Hill, 483; *Jackson v. Rayner,* 12 John. 291; *Simpson v. Patton,* 4 John. 422; *Barker v. Bucklin,* 2 Denio 45; *Loomis v. Newhall,* 15 Pick. 159." We have quoted this opinion at some length because it is so frequently cited in subsequent Illinois cases, sometimes with approval and at other times as questionable.

In *Resseter v. Waterman,* 151 Ill. 169, the court said: "It may be said to be the settled rule, that where the agreement is original and independent, it is not within

the statute; if collateral, it is. (*Eddy v. Roberts,* 17 Ill. 505; *Geary v. O'Neil,* 73 id. 593; *Hartley v. Varner,* 88 id. 561.) And the agreement may be regarded as original, and not within the statute, although it directly involves the interests of or concerns a third party, or may relate to an act, or the performance thereof, by one not a party to the contract. (*supra;* and cases cited.) . . .

"In order that the promise can be held to be within the statute, it is essential that there be a binding and subsisting obligation or liability to the promisee, to which the promise is collateral. In other words, 'that the party for whom the promise has been made must be liable to the party to whom it is made.' (3 Pars. on Contr., * 21, note p; *Hargreaves v. Parsons,* 13 M. & W. 561; 50 Exch. Rep.; *Eastwood v. Kenyon,* 11 A. & E. 438; *Westfall v. Parsons,* 16 Barb. 645; *Preble v. Baldwin,* 6 Cush. 549; *Pratt v. Humphrey,* 22 Conn. 317; *Alger v. Scoville,* 1 Gray, 391; *Baker v. Bucklin,* 2 Denio, 45; *Perkins v. Littlefield,* 5 Allen, 370; *Thighe v. Morrison,* 116 N. Y. 263, and cases cited.)"

Another case upon which plaintiff seems to rely is that of *Lusk v. Throop,* 189 Ill. 127. In that case, the defendant promised and agreed to pay for certain goods which, at the time of the promise, had not been delivered to the person to whom they were afterwards supplied. In its opinion, the court quoted at length from *Resseter v. Waterman, supra,* and held that under the facts, the promise was original and not collateral, and that the action was not barred by the statute because the promise was not in writing. Plaintiff takes the position, however, that under the authority of *Resseter v. Waterman, supra,* unless there is a binding and subsisting obligation or liability on the part of the bank, to which Healy's promise was collateral, that Healy's promise did not come within the terms of the statute of frauds, and need not be in writing and signed

by him, in order that recovery might be had against him. Plaintiff bases his theory in this regard upon the fact that the Supreme Court of the United States held that the contract between the plaintiff and the bank was ultra vires, and beyond the power of the bank to enter into, and that, therefore, Healy's contract became an original and not a collateral agreement. Plaintiff also alleges that, by the facts set forth in the complaint, it is shown that a fiduciary relationship existed between plaintiff and Healy, which created a primary and not a collateral obligation on Healy's part.

In *McNeil v. Bulkley,* 269 Ill. App. 1, plaintiff brought an action for damages based upon a claim of fraud and deceit on the part of the defendant in the sale of certain bonds to plaintiff. The bonds were issued by the "Avoca Drainage District, Parish of St. Mary, State of Louisiana," and it was charged that the defendant falsely and fraudulently represented to the plaintiff that the bonds were valuable, that they were well secured, and that if the drainage district for any reason defaulted in the payment of interest or principal, the State of Louisiana was behind the bonds, and was obligated to pay the taxes on the land just the same as the private owner was required to do, that the bonds were an obligation of the State of Louisiana, and that they, the defendants, had the opinion of a lawyer, designated as a judge, to that effect. It is also alleged and proved in this case that defendants had issued a circular, in which they stated that "The *legal details* in connection with these bonds have been under the supervision of Judge R. E. Milling . . . of New Orleans, have been tested and approved in the Supreme Court of Louisiana, and *their legality* has also been passed on by Messrs. Wood & Oakley of Chicago." It was held that plaintiff could not recover in an action based on these allegations, and the court said, as to the statements made, that they "were mere expressions of

opinion on questions of law. And it is well settled that 'ordinarily one is not liable for false representations respecting a mere question of law.' (*Dillman v. Nadlehoffer*, 119 Ill. 567, 577; *Fish v. Cleland*, 33 Ill. 238, 243; *Upton v. Tribilcock*, 91 U. S. 45, 50.)'' In the instant case, it is charged that the defendant, a lawyer, had given the plaintiff an opinion to the effect that he, defendant, believed that the Atlas Exchange National Bank, a national bank, had the right to enter into the contract with the defendant, which it did enter into, and that he, defendant, had an opinion from the Comptroller of Currency of the United States to that effect. It is not charged in the complaint that Healy told an untruth when he said he had such an opinion from the Comptroller of Currency of the United States, and there is no claim that there was any deception practiced in that regard. On the authority of *McNeil v. Bulkley, supra,* and the cases there cited, we are of the opinion that upon the facts set forth in the bill of complaint, plaintiff cannot predicate a charge of fraud and deceit. We are further of the opinion that upon the showing made, the alleged promise of Healy was collateral to the contract entered into with the bank, and that the fact that this contract was subsequently held to be *ultra vires* and beyond the power of the bank to make, does not alter this situation.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.