## Westfall *vs.* Parsons.

A first and second indorser of a promissory note, on being informed by the maker, before the note became due, that he would not be able to pay it, at maturity, proposed to him that he should make an assignment of his property, giving a preference to the note. The assignment was accordingly made, to the first indorser and another person, and the indorsers agreed in consideration thereof to pay the note, and look to the assignment for their pay. This promise was in terms joint, and there was no evidence of an intention that it should not create, as between the indorsers, a joint obligation. *Held,* that the relation of the parties to the note, as first and second indorser, was, as between themselves, terminated by this new agreement; and that neither could thereafter have recourse to the maker of the note, beyond the assignment; nor could the second indorser have recourse to the first, beyond hi. liability as assignee, further than to enforce the payment of one half of the debt.

*Held also,* that the verbal agreement between the maker and the indorsers was not invalid for want of a consideration, nor void by the statute of frauds.

After a party has voluntarily performed an agreement alleged to be void by the statute of frauds, he will not be permitted to allege that it was not binding upon him, and repudiate it.

This action was brought for moneys alleged to have been paid by the plaintiff for the use of the defendant and at his request, and was tried at a circuit court in Wayne county, held by Justice Welles, in January, 1853. The following facts were proved on the trial. On the 12th of December, 1849, Jabez Parsons made

a note for $1000, payable sixty-three days after date to the order of the defendant at the Seneca County Bank, which note was indorsed by the defendant and the plaintiff. On the 15th of the same month, the maker of the note executed a mortgage to the defendant, upon land in Ontario county, conditioned for the payment, as expressed therein, of "all such promissory notes as the said party of the second part has or may indorse for the said party of the first part, for and during one year from the date hereof, to the payment of which notes this mortgage is as a collateral security." On the 11th of February thereafter, Jabez Parsons executed to the defendant and Charles E. Hobby an assignment of all his property and effects, excepting such personal property as was by law exempt from execution, in trust to pay, first, the expense of drawing the assignment; next, the said note, after deducting what might be realized by the defendant from said mortgage; and afterwards other debts. On the 12th of the same month, the said note was paid to the bank by the parties to this action, in part by a note for $500, executed by them, and indorsed by James Hornbeck, which was delivered to said bank, by which they jointly and severally promised to pay the said sum to the order of the said Hornbeck, at said bank, three months after date, and the residue in money. The note for $1000 was taken up at that time, which was several days before it would mature. On the 11th of May, 1850, the parties executed their joint and several note for $300, payable to William Bradley or bearer with interest, on the 25th of October then next, which was given for money borrowed of the said Bradley by them to pay, and which was paid, upon the said note for $500. This last note was transferred by Bradley to Hornbeck, and was paid by the plaintiff to Hornbeck, the 25th October, 1850. The amount paid was $309,80. The plaintiff also paid $15 on the 8th of June, 1850, to said bank, on the $500 note. The sums paid, with interest from the time of payment to the time of the trial, amounted to $376,33.

The counsel for the defendant then proposed to prove by said Hobby, who was sworn as a witness for the defendant, that shortly previous to making said assignment, and on the same

day it was made, Jabez Parsons informed the plaintiff and defendant that he was insolvent, and should be unable to pay the said $1000 note when it would become due; that the plaintiff and defendant then proposed to the said Jabez Parsons, and verbally agreed, that if he would make an assignment of all his property to the defendant and Charles E. Hobby, and prefer the payment of the said $1000 note, they, the plaintiff and defendant, would go on and pay up the note, and look to the assignment for their pay; that Jabez Parsons agreed to the proposition, and that the assignment was made in pursuance of such agreement. The counsel for the plaintiff objected to such offer, and the said justice sustained the objection; to which decision the defendant's counsel excepted. The defendant's counsel then offered to prove by the witness, that after the assignment was executed, and on the 11th day of February, 1850, the defendant advanced $269 towards paying the $1000 note, and which was paid thereon, out of his own funds; and that the plaintiff at the same time agreed to repay to the defendant one half of the sum he so advanced, beyond the amount advanced by the plaintiff at the same time, and which said one half amounted to $118,50, and executed to the defendant an agreement in writing to that effect, which agreement in writing the defendant's counsel produced, and offered to prove and give in evidence in connection with the foregoing facts. That agreement in writing was as follows: " Whereas, in raising money to pay or take up a certain note which Jabez Parsons made, and indorsed by me and George Parsons, the said George Parsons furnished $118,50 more than I, in consideration of which I hereby agree to pay to the said George Parsons the sum of $118,50 with use. Phelps, Feb. 11, 1850. Henry Westfall." The plaintiff's counsel objected to this offer, and to the giving the said agreement in writing in evidence, and the said justice sustained the objection; to which decision the counsel for the defendant excepted. The defendant's counsel then offered to prove by the witness, that the defendant paid out of his own funds, independent of any thing received on account of the assignment, towards paying the $1000 note, an amount equal to all payments by the plaintiff

for that purpose.   The plaintiff's counsel objected to the offer, and the justice sustained the objection; to which decision the defendant's counsel excepted.   The defendant's counsel then offered to prove, that at the time of making the agreement first offered to be proved, the plaintiff was indebted to Jabez Parsons on a note and account in a large sum of money, and sufficient to pay the sum claimed by the plaintiff in this action.   The plaintiff's counsel objected to this offer, and the justice sustained the objection ; to which decision the defendant's counsel excepted.   The defendant's counsel then insisted and claimed, that upon the proofs the parties were jointly holden to pay the said $500 note given to the Seneca County Bank, and that the plaintiff was entitled to recover of the defendant only one half of the several amounts proved to have been paid by the plaintiff, and requested the said justice so to charge the jury.   The justice overruled said position, and refused so to charge, but on the contrary charged the jury, that the plaintiff was entitled to recover the whole amount of the said $376,33 ; to which over-ruling, refusal and charge, the defendant's counsel excepted. The jury rendered a verdict in favor of the plaintiff for $376,33.

Judgment having been entered on the verdict, the defendant appealed to the general term.

*L. Sherwood*, for the defendant.

*J. C. Smith*, for the plaintiff.

*By the Court*, T. R. STRONG, J.   It is insisted on the part of the plaintiff, that the verbal agreement between Jabez Parsons and the parties to this action, which the defendant's counsel proposed to prove, was invalid for want of consideration, and by the statute of frauds ; and that if valid, it did not change the relation of the parties to the action, in respect to the debt, to each other, and make them, as between themselves, jointly liable for its payment.

The position taken in respect to the question of consideration is, that Jabez Parsons did not agree to do, or do any thing more

Westfall *v.* Parsons.

than he was under a legal obligation to do, and than might have been compelled by the plaintiff and defendant as his indorsers. If this were so; if what was done by him was only co-extensive with an existing obligation on his part, I agree that it would not be a sufficient consideration for the undertaking of the plaintiff and defendant. (*McDonald* v. *Neilson,* 2 *Cowen,* 183.) But it is apparent that the case will not warrant this position. When the agreement was made, and the assignment executed, the note was not due, and neither payment nor provision for its payment could have been enforced. Besides, the agreement of the maker was not simply to pay the note, but to make an assignment of all his property to certain persons, and give this note a preference in payment over his other debts. It is hardly necessary to observe that no legal obligation to do this existed, and that the law afforded no remedy to compel it.

The statute of frauds was not applicable to the undertaking of the parties to this action. Their undertaking was with the *debtor* to pay *his* debt, and was founded upon a new and original consideration. The promise was not a collateral, but an original promise. In consideration of the assignment, and the preference given therein to the $1000 note, they assumed the payment of the note, trusting to the assignment for reimbursement of their advances. As between them and the debtor, the liability of the latter thereafter to the creditor, beyond the fund created, until the debt was paid, was as their surety. (*Conkey* v. *Hopkins,* 17 *John.* 113. *Olmstead* v. *Greenly,* 18 *Id.* 13. *Myers* v. *Morse,* 15 *Id.* 425. *Farley* v. *Cleveland,* 4 *Cowen,* 432, *and cases there cited. Ellwood* v. *Monk,* 5 *Wend.* 235. *Barker* v. *Bucklin,* 2 *Denio,* 45.)

But assuming the agreement in question was void by the statute of frauds, it was not illegal, and the assignment was made, and the $1000 note paid, in pursuance of it. The plaintiff has voluntarily performed the agreement on his part, and it cannot avail him now to allege that it was not binding upon him, and repudiate it. (*Abbott* v. *Draper,* 4 *Denio,* 51. *Emmett, receiver,* v. *Reed, Selden's notes of cases in court of appeals, No.* 3, *p.* 47.)

In order to give a just construction to the agreement, as to the obligations assumed by the plaintiff and defendant, it is proper to look at their position in reference to the $1000 note when the agreement was made. Neither of them was then under an absolute liability to pay the note. The liability of each was contingent, and depended upon the default of the maker to pay at maturity upon due presentment, and due notice of such default to them. Payment of the note by the maker, or an omission of due presentment, or notice, would discharge them., Occupying this position, and being informed by the maker that he would not be able to pay the note when it should become due, they proposed to him to make the assignment, giving a preference to the note, which was done, and agreed in consideration thereof to pay the note, and look to the assignment for their pay. The promise was in terms joint, and I see no evidence of an intention that it should not create, as between the plaintiff and the defendant, a joint obligation. They were to pay, and look to the assignment for repayment. Their relation to the note as first and second indorser, was, I think, as between themselves, terminated by this new agreement. Neither could thereafter have recourse to the maker of the note beyond the assignment, nor could the plaintiff have recourse to the defendant beyond his liability as assignee, further than to enforce the payment of one half of the debt, and effect be given to the last branch of the agreement. If the plaintiff and defendant had jointly paid the debt, each advancing one half without either becoming fixed as indorser, and without any new agreement that the amount advanced by the plaintiff should be refunded to him, I am not aware of any principle upon which he could recover that amount of the defendant. It could not, with any propriety, be said that at that time, the obligation of the defendant to pay the note was greater than that of the plaintiff. And the claim of the plaintiff, under the circumstances of the present case, is certainly no better than it would be in the case supposed. The fact that the liability of the defendant as indorser, to pay the note at maturity, was fixed, *as to the holder,* by the acceptance of the assignment, before the money was paid by the plaintiff, cannot aid the

plaintiff in his claim to recover the whole amount paid, of the defendant, as the assignment was accepted in pursuance of the agreement, and the agreement must control as to the rights of the parties in respect to each other.

If the views expressed are correct, the evidence offered, of the agreement referred to, and of payments by the defendant, should have been received.

The judgment must be reversed and a new trial granted, with costs to abide the event.