O. A. RESSETER

*v.*

WILLIAM WATERMAN.

*Filed at Ottawa, June 19, 1894.*

| 151 | 169 |
| 156 | 559 |
| 151 | 169 |
| 79a | 32 |
| 151 | 169 |
| 87a | 144 |
| 87a | 410 |
| 151 | 169 |
| f189 | [1]133 |
| 189 | 134 |
| 151 | 169 |
| f97a | [2]211 |

1. STATUTE OF FRAUDS—*promise to pay the debt of another—whether original or collateral.* It is the settled rule, that where the agreement to pay the debt of another is original and independent, it is not within the statute of frauds; and the agreement may be regarded as original, and not within the statute, although it directly involves the interests of or concerns a third party, or may relate to an act, or the performance thereof, by one not a party to the contract.

2. SAME—*valid debt necessary to bring promise within the statute.* In order that the promise can be held to be within the statute, it is essential that there be a binding and subsisting obligation, or liability to the promisee, to which the promise is collateral. In other words, that the party *for* whom the promise has been made, must be liable to the party *to* whom it is made.

3. It is also well settled, that the liability of the person for whom the promise is made, to the promisee, must be one which is capable of enforcement. The liability, to which that of the promisor is supposed to be collateral, must be one which can be enforced in an action at law or in equity. Unless it appears that some person, other than the promisor, has incurred an actual liability with respect to the subject-

matter of the promise, the agreement is not within the statute, although the third person may be under an imperfect obligation, or merely moral obligation to respond.

4. If the third party be not liable to answer, it can not be said that the undertaking of the promisor was one to "answer" for the former's debt or default, and, therefore, within the statute. There being no liability of the third party to the promisee, the promisor will have nothing to answer for, and his promise, therefore, will necessarily be an original and independent undertaking, and not a collateral one.

5. SAME—*undertaking to pay the debt of another.* If the circumstances are such as to authorize the inference that C., the person for whom the guaranty is given, made an *actual promise* to indemnify his guarantor at the time when the undertaking of A. was given, or prior thereto, the reasonable presumption will be that the promise of A. was intended to be collateral. If, on the other hand, there is nothing in the case from which an *actual* promise by C. can be inferred, and he can only be made liable on a promise raised by law from B.'s having been compelled to pay money on his account, it seems clear that the promise of A. must be original, for the reason that the promise of C. arises upon a subsequent and independent fact, after the promise of A. has become a complete and valid contract.

6. SAME—*promise, whether collateral or independent.* A., by parol, agreed with B., that if the latter would sign a note of C. as surety to A., he, A., would procure the execution of a chattel mortgage by C. to secure the payment of the note, and a previous note of C., on which B. was a surety, C. making no promise to B.: *Held,* that the promise of A. to procure the chattel mortgage for the benefit of B. was not void under the statute of frauds, and that it was supported by a valuable consideration.

7. In such case, the promise of A. to obtain a chattel mortgage from C. was not a promise of indemnity, nor a guaranty of indemnity. If A. had procured the mortgage, he would not have discharged or rendered himself liable to discharge, or undertaken to pay any debt or obligation of C., and this is said to be a conclusive test whether the promise of A. was within the statute of frauds.

8. SURETY—*implied obligation to save harmless—not enforcible.* While, in the absence of any express agreement on the part of a debtor to save his surety harmless, he may be regarded as under an implied obligation to indemnify his surety, yet he is not bound to do so; and neither at law nor in equity can such implied obligation be enforced. No bill lies to compel performance, nor any action for damages for its non-performance.

9. SAME—*action before payment of the debt—premature.* Upon this implied obligation, the surety, after discharging the indebtedness, may

have his action over against the principal; but the surety can maintain no action against his principal until he pays the debt. In the absence of an express agreement, his remedy would be *assumpsit* for the money actually paid by him, and interest; and even when the principal has expressly promised to indemnify and save his surety harmless, the latter can maintain no action on the promise, unless he can show that he has given his own notes, or made other like arrangements equivalent to payment of the indebtedness.

10. CONTRACT—*consideration.* Where the holder of a note past due induces the security to renew the same, extending the time of payment, and to sign another note for his principal, by the promise of the payee to procure a chattel mortgage from the principal, securing the notes, the promise will be founded on a sufficient consideration, the transaction being of advantage to the party making the same, and to the disadvantage of the surety.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding.

This was an action of assumpsit, in the Circuit Court of Lee county, brought by appellant against appellee, to recover damages alleged to accrue to appellant, by reason of the failure of appellee to perform his promise to obtain a chattel mortgage upon the personal property of one Ole Severson, to secure the payment of certain indebtedness of John and said Ole Severson, to appellee, and for which appellant was surety.

The declaration alleged, in substance, that on April 12, 1889, Waterman promised Resseter that if he (Resseter) would sign a promissory note for $250, dated February 15, 1889, payable to the order of Waterman one year after date, as surety for the said Seversons, he (Waterman) would forthwith obtain a chattel mortgage upon all the personal property of said Ole Severson, to secure the payment of said note, and to secure the payment of a previous note for $250, dated November 15, 1888, given by the said Seversons to Waterman, and also signed by plaintiff as surety. It is also alleged that said Ole Sever-

172 RESSETER *v.* WATERMAN.

Statement of the Case. Brief for the Appellant.

son had, during the period covered by the agreement, sufficient unincumbered personal property to secure the payment of both said notes, and that he was then and afterwards ready and willing to give a chattel mortgage sufficient to indemnify the plaintiff as surety, and for that purpose, of which the defendant had notice. That the defendant promised to indemnify and save harmless the plaintiff as surety, and plaintiff, confiding in the said promises, executed as surety and delivered to defendant the said note of February 15, 1889; that said notes afterwards, and before the maturity thereof, were negotiated by the defendant; that both said Seversons are insolvent, and plaintiff solvent and legally bound to pay said notes; that. the defendant did not and would not take a chattel mortgage from said Ole Severson, and did not and would not indemnify plaintiff, as promised, and that plaintiff, relying upon such promise, did not himself procure a chattel mortgage, etc. It is further alleged, that the holder of said notes (Ella Waterman) had, May 1, 1890, obtained judgment thereon for $750, which was a lien upon the plaintiff's property, and that he will be forced and obliged to pay the same, etc.

The defendant pleaded the general issue of non-assumpsit, the plea of *non-damnificatus*, and also set up the statute of frauds.

Trial was had by a jury, who returned a verdict in favor of the plaintiff for $583, and judgment was entered for the amount. On appeal to the Appellate Court, the judgment was reversed, without remandment of the cause, and that court, having granted a certificate of importance, the plaintiff below appeals.

Messrs. DIXON & BETHEA, for the appellant:

The contract was not within the statute of frauds. It was not a promise to pay the debt of another. Browne on Statute of Frauds, sec. 177; Brandt on Suretyship, sec.

60; *Bushnell* v. *Beavan*, 1 Bing. (N. C.) 103; *Jarmin* v. *Alger*, 2 C. P. 249; *Town* v. *Grover*, 9 Pick. 305; *Marion* v. *Faxon*, 20 Conn. 486; *Williams* v. *Leper*, 3 Burr. 1886; 1 Reed on Stat. of Frauds, sec. 34; Throop's Verbal Agreements, sec. 114; 3 Parsons Cont. 22; Smith's L. C., vol. 1, pt. 1, 536.

It is not an attempt to vary a written contract by parol evidence. It is an attempt to enforce an independent contract. *Waterhouse* v. *Kendall*, 11 Cush. 128; *Stacey* v. *Kemp*, 97 Mass. 166; *Hodgkins* v. *Moulton*, 100 id. 311; Brandt on Suretyship, sec. 352.

There was a consideration for the promise of Waterman to get the mortgage. It was the signing of the new note by Resseter. That was a good consideration. *Buchanan* v. *International Bank*, 78 Ill. 500; *Burch* v. *Hubbard*, 48 id. 164; Anderson's Law Dictionary, 231; Brandt on Suretyship, sec. 213; *Carroll* v. *Nixon*, 4 W. & S. (Pa.) 517; *Carman* v. *Noble*, 9 Penn. St. 366.

Messrs. O'BRIEN & O'BRIEN, for the appellee:

The alleged promise to obtain a mortgage from Severson was a promise to answer for the debt or default of another, and not being in writing, was within the Statute of Frauds and Perjuries, and void. *Scott* v. *Thomas*, 1 Scam. 59; 1 Smith's Lead. Cas., 536, 537 (9th Am. Ed.); Brown on Statute of Frauds, secs. 134, 152; *Kingsley* v. *Balcombe*, 4 Barb. 131; 8 Am. and Eng. Encyclopœdia of Law, 679; *Carville* v. *Crane*, 5 Hill, N. Y. 484; S. C., 40 Am. D. C. 364, followed in *Dee* v. *Downs*, 54 Iowa, 589; *May* v. *Williams*, 91 Miss. 125; S. C., 48 Am. Rep. 80.

Contracts of indemnity to a surety are within the statute. *Brand* v. *Whelan*, 18 Ill. App. 190.

There was no new, original or independent consideration to support Waterman's promise, and take it out of the Statute of Frauds. Fieldman on Com. Paper, sec. 164; *Eddy* v. *Roberts*, 17 Ill. 505; *Murto* v. *McKnight*, 28 Ill. App.

174     RISSETER *v.* WATERMAN.

Brief for the Appellee.    Opinion of the Court.

238; *Townsend* v. *Lang*, 77 Pa. St. 143; *Graham* v. *Mason*, 17 Ill. App. 399; *Clapp* v. *Webb*, 52 Wis. 642.

Proof of the alleged promise is inadmissible under the rule forbidding parol evidence to vary or contradict a written contract. Brandt on S. & G., sec. 226; *First Natl. Bank* v. *Whitman*, 66 Ill. 331; *Harris* v. *Galbraith*, 43 id. 309; *Lane* v. *Sharpe*, 3 Scam. 572; *Penny* v. *Graves*, 12 Ill. 287; *Harlow* v. *Boswell*, 15 id. 56; *Foy* v. *Blackstone*, 31 id. 538; *Hypes* v. *Griffin*, 89 id. 136; 2 Suth. on Dam., p. 146, and cases cited; Randolph on Com. Paper, secs. 782, 783; *Foster* v. *Clifford*, 44 Wis. 570; *Gilbert* v. *Ballou, Jr.*, 29 Vt. 296.

The agreement as claimed amounted to an agreement to indemnify against loss or damage, not *liability*, and if otherwise good, no cause of action would accrue under it, until appellee actually paid the judgment. *Gilbert* v. *Wyman*, 1 Comstock, 550; S. C., 49 Am. Dec. 359, and *note*.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

In this case there is no longer any controversy about the facts. They are, by both the Circuit and Appellate Courts, found to be substantially as contended for by the plaintiff. But the Appellate Court, conceding the case to be with the plaintiff upon the facts, held, that the agreement was one to answer for the debt, default or miscarriage of another, and not being in writing, was within the statute of frauds, and, therefore, void.

The principal question presented for our consideration is, whether or not the agreement in question is obnoxious to the provision of the statute of frauds, "That no action shall be brought, * * * whereby to charge the defendants upon any special promise to answer for the debt, default or miscarriage of another person," unless the promise be in writing, and signed by the party to be charged, etc. (Sec. 1, Ch. 59, R. S.) A consideration of this

question opens the field of discussion and classification of the various cases, illustrating the application of the rule of liability under this clause of the statute, and the nice and well-considered distinctions which have been drawn and followed; but the necessity therefor does not exist, and we forbear entering thereon. (See: *Leonard* v. *Vredenburgh,* 8 Johns. 29; *Farley* v. *Cleveland,* 4 Cow. 432; *Mallory* v. *Gillett,* 21 N. Y. 412; *Anderson* v. *Spence,* 75 Ind. 315; *Nelson* v. *Boynton,* 3 Met. 396.)

It may be said to be the settled rule, that where the agreement is original and independent, it is not within the statute; if collateral, it is. (*Eddy* v. *Roberts,* 17 Ill. 505; *Geary* v. *O'Neil,* 73 id. 593; *Hartley* v. *Varner,* 88 id. 561.) And the agreement may be regarded as original, and not within the statute, although it directly involves the interests of or concerns a third party, or may relate to an act, or the performance thereof, by one not a party to the contract. (*Supra;* and cases cited.)

It is, therefore, necessary to ascertain whether or not the agreement in question was an original and independent one; a question which has been found by the courts, in a vast number of cases, to be one not of easy determination, but happily, in this case, one of no serious difficulty.

It is contended, that the promise of Waterman, made in consideration of appellant executing as surety the $250 note, dated February 15, 1889, to obtain a chattel mortgage on all of Ole Severson's personalty to secure the payment of that note, and also another one for like amount, previously given by the same party, with appellant as surety, was a promise to answer for the debt, default or miscarriage of another. That is, that there was an implied obligation upon the part of Ole Severson to indemnify and hold harmless his surety, and that the promise of appellee was purely collateral thereto. This position, we think, is not tenable.

In order that the promise can be held to be within the statute, it is essential that there be a binding and subsisting obligation or liability to the promisee, to which the promise is collateral. In other words, "that the party for whom the promise has been made must be liable to the party *to* whom it is made." (3 Pars. on Contr., *21, note p; *Hargreaves* v. *Parsons*, 13 M. & W. 561; 50 Exch. Rep.; *Eastwood* v. *Kenyon*, 11 A. & E. 438; *Westfall* v. *Parsons*, 16 Barb. 645; *Preble* v. *Baldwin*, 6 Cush. 549; *Pratt* v. *Humphrey*, 22 Conn. 317; *Alger* v. *Scoville*, 1 Gray, 391; *Baker* v. *Bucklin*, 2 Denio, 45; *Perkins* v. *Littlefield*, 5 Allen, 370; *Thighe* v. *Morrison*, 116 N. Y. 263, and cases cited.)

In *Hargreaves* v. *Parsons*, *supra*, it was said by Parke, B.: "The statute applies only to promises made to the persons to whom another is already or is to become answerable. It must be a promise to be answerable for a debt of or a default in some duty by that other person *towards the promisee*." In *Perkins* v. *Littlefield*, *supra*, Bigelow, J., said: "It is the well settled doctrine, that the provision in the statute is applicable only to promises made to persons to whom another is answerable."

Not only must this be so, but it is quite as well settled, that the liability of the person for whom the promise is made, to the promisee, must be one which is capable of en-forcement. And the doctrine is stated to be (Throop Verb. Ag., sec 127), "that the principle requires that the liability to which that of the promisor is supposed to be collateral, should be one which can be enforced by proceedings at law or in equity; and, therefore, unless it appears that some person, other than the promisor, has incurred an actual liability with respect to the subject-matter of the promise, the agreement is not within. the statute, although the third person may be under an imperfect or merely moral obligation to respond." (*Downey* v. *Hinchman*, 25 Ind. 453;

*Read* v. *Nash*, 1 Wilson, 305; *Smith* v. *Mayo*, 1 Allen, 160; *Thighe* v. *Morrison, supra.*)

For, if the third party be not liable to answer, it could not be said that the undertaking of the promisor was one to "answer" for the former's "debt or default", and, therefore, within the statute. There being no liability of the third party to the promisee, the promisor would have nothing to answer for, and his promise, therefore, would necessarily be an original and independent undertaking, and not a collateral one.

No express agreement, that Severson should save harmless his surety, is shown or pretended. And while he might properly be regarded as under an implied obligation to indemnify his surety, he was not bound to do so. Neither at law nor in equity was such implied obligation susceptible of being enforced; no bill would lie to compel performance, nor action for damages for its non-performance. Upon this implied obligation the surety, after discharging the indebtedness, would have his action over against his principal. It is manifest, and requires no citation of authority to show, that the only obligation upon the part of Severson was that arising by operation of law, to re-imburse and make good to his surety the amount expended in payment of his debt. It is a familiar rule, that the surety can maintain no action against his principal until he pays the debt. In the absence of express agreement, his only remedy, then, would be assumpsit for the money actual paid and interest. And even where the principal has expressly promised to indemnify and save his surety harmless, the latter can maintain no action on the promise, unless he can show that he has given his own notes or made other like arrangements equivalent to payment of the indebtedness. (3 Pars. on Contr. *186, *187, notes.

As said by Mr. Parsons (3 Law of Contr. *21, N. p): "The question would seem to depend upon the time when

the promise of C., the person for whom the guaranty is given, arises. And this again will depend upon the particular circumstances of the case. If these are such as to authorize the inference that C. made an *actual promise* to indemnify his guarantor at the time when the undertaking of A. was given or prior thereto, the reasonable presumption is, that the promise of A. was intended to be collateral. If, on the other hand, there is nothing in the case from which an *actual promise* by C. can be inferred, and he can only be made liable on a promise raised by operation of law, from B.'s having been compelled to pay money on his account, it would seem to be clear that the promise of A. must be original. For the promise of C. arises upon a subsequent and independent fact, after the promise of A. has become a complete and valid contract." See cases there cited; *Bushnell* v. *Beavan*, 1 Bing. (N. C.) 320; 27 E. C. L. R; *Jarmain* v. *Alger*, 2 C. & P. 249; 12 E. C. L. R; Woods' Stat. of Frauds, sec. 117; Browne Stat. Frauds, sec. 177; Throop on Verb. Ag., secs. 114, 115; Brandt on Suretyship, sec. 60; and cases cited. It would, therefore, seem clear, that according to the foregoing well established principles, there being no actual liability on the part of Severson, by express agreement or otherwise, to indemnify his surety, which was capable of enforcement, it follows, necessarily, that the promise of appellee was an independent undertaking, and not within the statute; for there was no promise on the part of Severson to indemnify to which it could be collateral.

But, treating the implied obligation of Severson to indemnify his surety as equivalent to a contract actually made, within the contemplation of the statute, it does not necessarily follow, that the promise of a party to hold the surety harmless would, in such case, be regarded as collateral to the implied obligation of Severson. The promisor does not undertake to be answerable for the amount of the note which Severson as principal is, in the first instance,

bound to pay, nor could it for a moment be contended that an action thereon could be maintained against him. His promise is to pay what his promisee, the surety, will be ultimately liable to pay. If, after the principal has defaulted, the surety has had to pay the whole amount or make up a deficit, it is this amount, together with other elements of damage, which the promisor promised that he would be responsible for, and not the sum due and owing on the note from the principal debtor to the payee, or holder. The measure of the amount of recovery in such case would not be the amount of the debt, but the actual damages sustained, including payments made down to the time of trial. (1 Suth. on Dam. 190.)

The principle under consideration is illustrated by Mr. Bishop. (Law of Contr., sec. 1265), as follows: "One's promise to another to see him harmless, should he become surety for a third person, or should he do anything else, is a mere arrangement between promisor and promisee. It is to pay what the one to whom it is made may become liable for,—not 'another's' debt, but his. Therefore, it is not within the statute, and is valid though oral. * * * * On principle, this question is determinable by a very simple test. You promise James, that, if he puts his name, as surety for John, on a bond running to Richard, you will hold him harmless; he does it; John makes default. All agree that, in this case, John is the 'another' of the statute. But Richard, to whom the debt is due, can not sue you; John failing, his claim over is alone on James. Aside from difficulties as to the form of the action, your liability begins only when James has paid him. There remains now for adjustment only what you had promised to James, who is not 'another,' but the promisee himself,—the debt is yours to him, and there is nothing going out from you to any third person. Hence, the case is not within the statute." See cases in notes.

Here, it will be admitted, Severson was the "another", for whose default Waterman must be held to have undertaken to answer, if his promise to Resseter is within the statute. It is clear, that Severson at no time made default in not indemnifying Resseter, for he was under no contract obligation to indemnify him. Not having promised indemnity, Severson could not make default in any promise or undertaking with Resseter, that he would give him a chattel mortgage or other indemnity. Therefore, Waterman's promise to Resseter, that he would take a chattel mortgage from Severson for Resseter's benefit, was not, and could not, be collateral to any promise by Severson to Resseter, for no such promise or undertaking was made or entered into between them.

The undertaking of Waterman was not to release Resseter from any portion of the debt, or to do any act or thing affecting the liability of Severson to pay the note according to its terms, but was an undertaking and promise to do and perform something wholly outside and independent of the indebtedness of Severson, for the benefit of Resseter, in consideration that Resseter would execute the note.

Resseter, at the time of the promise, could have secured himself by chattel mortgage upon Severson's property, or, if not, Severson's property could have been resorted to, to pay the debt then due. Waterman desired that the indebtedness be extended and a new note given, with Resseter as surety. Now, instead of Resseter taking from Severson a chattel mortgage or other indemnity against his liability as surety for Severson, Waterman undertook and promised Resseter that he, Waterman, would procure a chattel mortgage on Severson's property to indemnify Resseter. But for this promise, Resseter could—and no doubt would—have subjected Severson's property to the payment of the overdue indebtedness. Resseter had a right to rely on the promise of Waterman, by reason of which he was

prevented from taking security himself, or then subjecting Severson's property to the payment of the debt. The conclusion is irresistible, that the undertaking of Waterman with Resseter was not to do any act or thing that Severson was bound to do, but an independent promise, made upon sufficient consideration, to do something which was not an undertaking to pay any portion of Severson's debt, but which would indemnify Resseter to the extent of Severson's property if the latter failed to pay the notes.

This is not a case where the promisor promises indemnity against a debt due to himself, and that the surety on the note shall not be liable to pay the same. Resseter was already liable as surety upon the notes; he then had the means of indemnifying himself against loss out of Severson's property. The extension of the debt was of no advantage to him. He declined to sign the note extending the time of payment to Waterman, and was only induced to do so by the promise of Waterman, that a chattel mortgage should be taken by Waterman upon Severson's property for Resseter's benefit. This was not an agreement on the part of Waterman that he would pay any portion of Severson's debt to himself, or in anywise release either Severson or Resseter from liability. It was understood, and subsequent events proved it to be true, Severson was entirely willing to execute the chattel mortgage to Waterman. For Waterman, in violation of his agreement with Resseter, subsequently procured a chattel mortgage from Severson to secure other indebtedness due from Severson to Waterman, and for which Resseter was not security, and thereby swept away the property of Severson, which he agreed with Resseter should stand as indemnity to him, if he would sign the note extending the time of payment.

The mere promise to obtain a chattel mortgage was not indemnity, nor a guaranty of indemnity. Had Waterman procured the mortgage, and thereby have fulfilled his promise to appellant, it is plain that he would not have dis-

charged, or rendered himself liable to discharge, or under-
taken to pay any debt or obligation of Severson. And this
is said to be "a conclusive test" as to whether the promise
is within the statute. (Browne on Stat. Fraud, sec. 177.)
The case of *Bushnell* v. *Beavan, supra,* is in point. There
the defendant promised the plaintiffs, owners of a vessel,
of which H. S. was in charge, etc., that if they would let
H. S. sail, he, the defendant, would get T. M. to sign a
guaranty for the payment of freights by H. S. Upon this
promise H. S. was permitted to sail, and the guaranty was
not procured, and it was held, that the promise of the de-
fendant was not within the statute of frauds, and a recovery
was allowed, *H. S.* having defaulted. The soundness of
this holding was for a time questioned ( *Green* v. *Cress-
well,* 10 A. & E. 453; *Carville* v. *Crane,* 5 Hill, 483), but
is now generally acquiesced in by the courts and practically
all of the recent text writers.

It is, however, insisted, that the views here expressed
are in conflict with *Scott* v. *Thomas,* 1 Scam. 58. That
case is clearly distinguishable in principle from the case at
bar. Thomas sued Scott in *assumpsit,* alleging that Biggs
was indebted to him upon a promissory note, and that the de-
fendant held a mortgage upon a tract of land executed by
Biggs. That plaintiff's note was past due, and that the de-
fendant agreed, that in consideration of forbearance to sue
Biggs on said note, if Biggs did not pay it by the next term of
court, that he, the defendant, would foreclose said mortgage,
and that plaintiff might buy the land in at the foreclosure sale
for $1.25 per acre, if it did not sell for more, and that the
plaintiff should first satisfy his own debt, and pay the sur-
plus, if any, over to the defendant; that he did forbear to
sue; that the note was not paid, and that the defendant
did not foreclose his mortgage. This promise was held to
be within the statute of frauds. It is manifest, that there
was there an obligation from Biggs to pay the note, which
could be enforced at law, and the promise of Scott was to pay

that debt.  It was immaterial that the promise was that the debt should be paid out of the proceeds of the sale of the land, prior to the satisfaction of Scott's mortgage. The effect of the agreement was the promise by Scott to pay Biggs' debt to Thomas, and was properly held to be within the statute.  The sole undertaking of Thomas was collateral to the original promise of Biggs.  The distinction between the two cases is too apparent to require discussion.

What has already been said disposes of the contention that there was no consideration for the promise of Waterman.  Not only was Resseter thereby induced to place himself in a worse position, but Waterman was left in a more advantageous position, whereby he was enabled to control the disposition of Severson's property.  If he had carried out his agreement, any balance left after paying the indebtedness for which appellant was surety, would have been in his hands for application upon other indebtedness due from Severson.  It needs the citation of no authority, that, if the transaction was of advantage to Waterman, or detrimental or to the disavantage of Resseter, it would form a sufficient consideration for the promise.  That Resseter was induced thereby to consent to the extension of the time of payment to Severson and continue his liability as surety, and forego his right to then compel payment out of Severson's property, which by the failure of Waterman to keep his promise and subsequent conduct in violation of it, subjected Resseter to the loss, is not questioned. *Bunting* v. *Darbyshire*, 75 Ill. 408; *Buchanan* v. *International Bank*, 78 id. 500; *Burch* v. *Hubbard*, 48 id. 164.

We are of opinion, that the Appellate Court erred in reversing the judgment of the Circuit Court, and its judgment will be reversed, and that of the Circuit Court affirmed.

*Judgment reversed.*