SOLOMON SPEAR

*v.*

THE FARMERS' AND MECHANICS' BANK.

*Filed at Ottawa June 15, 1895.*

CONTRACTS — *collateral agreement is within Statute of Frauds.* An agreement between creditors, working together in protecting their claims, that they will bear equally any loss which either sustains in enforcing his claim, is a collateral undertaking, and therefore within the provision of the Statute of Frauds respecting a promise to answer for the debt, default or miscarriage of another, and must be in writing.

*Farmers' and Mechanics' Bank* v. *Spear,* 49 Ill. App. 509, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

The following statement of facts is taken from the opinion of the Appellate Court :

"In this case appellee filed a bill against Farmers' and Mechanics' Bank and John V. Farwell Co., appellants, and I. P. Norton, to compel the defendants to pay to him attorney's fees included in judgment notes taken by them from Thompson & McLean when the makers were insolvent, and afterwards reduced to judgment and collected, and to enforce an alleged verbal agreement between complainant and the president of said bank that the bank should pay complainant one-half of any loss he might sustain through failure to collect from said Thompson & McLean certain debts due from them.

"The bill alleged that complainant recovered a judgment in vacation, January 21, 1891, against Thompson & McLean for $4200 damages, and costs, on which execution was issued the same day, and returned June 15, 1891, satisfied as to $624.91 and unsatisfied as to the balance, which judgment remained in full force; that Thompson

& McLean had been insolvent since January 1, 1891; that on January 19, 1891, they gave John V. Farwell Co. a judgment note for $2473.83 and $250 attorney's fee, upon which the payee, knowing the insolvency, entered judgment January 21, 1891, and collected the same out of the property of said insolvents; that on January 20, 1891, said insolvents gave I. P. Norton a judgment note for $220 and $25 attorney's fee, on which judgment was entered January 21, 1891, which was collected in full; that on January 21, 1891, said insolvents gave to the bank a judgment note for $2043.67 and $102.18 attorney's fee, on which judgment was entered the same day and which was collected in full; that said Thompson & McLean, on December 1, 1890, and prior thereto, were indebted to complainant about $4000, on account of his being surety for them, with one Johnson, as Johnson, Thompson & McLean, to said bank, John V. Farwell Co. and Locke, Hulet & Co., and were also indebted to said bank on other notes on which complainant was not surety and on which the bank had no security; that about January 17, 1891, it was agreed between complainant and the bank that nothing should be done by either toward collecting said indebtedness until Thompson & McLean should complete an inventory of stock then being made, and that they would work together in protecting their claims, and in case of loss on either of said claims, would bear it equally; that the bank disregarded its agreement, and obtained said note and judgment covering only the unsecured debt to it, and sued Johnson, Thompson & McLean and complainant on the note on which complainant was surety, then amounting to $3671.89; that complainant had been compelled to pay Locke, Hulet & Co. $237.60 on his said liability as surety for them, and that complainant's total loss, after deducting the amount collected on execution and the profit realized by him on goods purchased at sheriff's sale, amounted to $2400, one-half of which the bank should pay under said agreement. The

prayer of the bill was that the defendants should be decreed to pay complainant said attorney's fees, and that the bank should be decreed to pay to him one-half of his said loss.

"The bank, in its answer, denied the making of the alleged agreement, as well as the authority of any officer of the bank to make an agreement of that kind, and pleaded the Statute of Frauds as a defense to such alleged agreement.

"The answer of John V. Farwell Co. denied any knowledge on January 19, 1891, of the insolvency of Thompson & McLean, and admitted the taking of the judgment note with attorney's fee, but averred that it was taken in renewal of previous notes, given when complainant represented the makers to be insolvent, which contained provisions for attorney's fees.

"The court, on a hearing of the cause, found that the complainant was entitled to the relief prayed for, and referred the cause to the master to state the account and find the net loss of complainant because of his suretyship.   The master reported that complainant, as surety for Thompson & McLean, was compelled to pay the bank $3500 and Locke, Hulet & Co. $237.80; that after crediting $624.71 realized on execution, $900 profit made on sale of goods, $250 attorney's fee to be paid back by John V. Farwell Co. and $25 attorney's fee to be paid back by Norton, the amount paid by complainant as such surety was $1938.86, and that there was due complainant from the bank, under the agreement, one-half of that sum, or $969.43.

"Objections and exceptions to said report were overruled, and the court decreed that John V. Farwell Co. pay complainant $250, that I. P. Norton pay $25 and that the bank pay $969.43, and that on payment of said sum by the bank it should be subrogated to the rights of complainant to the extent of one-half of the indebtedness due him from Johnson, Thompson & McLean.   From this

decree the Farmers' and Mechanics' Bank and John V. Farwell Co. appealed.

"The evidence showed that at the time complainant took his note and entered judgment thereon he was surety on the note for $3500 to the bank, and had guaranteed the account of Locke, Hulet & Co. for $237.86, and was also on a written guaranty to the amount of $1000, covering part of the indebtedness included in the judgment of John V. Farwell Co., and that Thompson & McLean were insolvent, but he had not then paid any of said liabilities. The judgment note was given for the purpose of indemnifying him for what he would have to pay, and it was taken and judgment entered for that purpose. Before the hearing he paid the judgment on the $3500 note, amounting to $3976.66, and the account of $237.80."

The Appellate Court affirmed the decree as to John V. Farwell Co. and reversed the decree as to the Farmers' and Mechanics' Bank, and Solomon Spear appealed. The question before this court is on the judgment of the Appellate Court on the contention between Spear and the bank.

E. P. & E. N. WILLIAMS, for appellant:

The general rule is, that if the promise is in the nature of an original undertaking to pay a debt to a third party, and is founded on a valuable consideration received by the promisor himself, it is not within the statute, and need not be in writing to make it valid and binding. *Wilson* v. *Bevins*, 58 Ill. 232; *Eddy* v. *Roberts*, 17 id. 505.

The agreement in the case at bar is strictly within the rule announced by this court in *Clifford* v. *Luhring*, 69 Ill. 401.

It is settled law that a promise for a promise is a good consideration everywhere. Bishop on Contracts, sec. 76; *Funk* v. *Huff*, 29 Ill. 145.

So if the debt for which one engages to answer is to be kept alive, but to be held for the benefit of the guarantor, the case is out of the statute. 3 Parsons on Contracts, (7th ed.) 24, and case in note *s*.

George W. Thompson, and F. F. Cooke, for appellee:

Section 1 of the Statute of Frauds is a perfect defense to this suit, so far as the Farmers' and Mechanics' Bank is concerned.    Rev. Stat. chap. 59, sec. 1.

The debt was still to be paid by Thompson & McLean, who were primarily liable.    The incidental or collateral promise of Spear was of no force for any purpose.    *Eddy* v. *Roberts,* 17 Ill. 505; *Murto* v. *McKnight,* 28 Ill. App. 238; *Hardman* v. *Bradley,* 85 Ill. 162.

Brandt on Suretyship, (2d ed.) sections 59 to 76, contains a full and concise summary of the decisions on this question.

Mr. Justice Phillips delivered the opinion of the court:

The principal question presented for consideration is, whether the alleged agreement between Spear and the bank, as alleged in the bill, is within that provision of the Statute of Frauds and Perjuries, "that no action shall be brought * * * whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person," unless the promise be in writing and signed by the person to be charged.    The determination of this question is dependent on whether the agreement is an original and independent one, or whether collateral to the agreement of another person, whereby the promise is to answer for the debt or default of that other.    In the first case it is not within the statute, in the second it is.    *Eddy* v. *Roberts,* 17 Ill. 505 ; *Resseter* v. *Waterman,* 151 id. 169.

The question whether an agreement is an original and independent one is often attendant with much difficulty in its determination.    In this case, Thompson & McLean were primarily liable and the principal debtors, and if the agreement was made as claimed, their liability was in no manner changed thereby.    By their discharge of their indebtedness neither party to the agreement would

have had to pay any sum to the other, even if the agreement had been in writing and a sufficient consideration for the promise of each to the other. The promise, if any was made by the bank, was a collateral promise. There was no change in the original indebtedness, the original debtors remaining liable to the original creditors precisely the same as when the indebtedness was originally contracted. Spear had no lien of any kind and gave up and yielded no right he had against the debtors, but, as he says, he orally undertook to share with the bank its loss, if any, on the $2000 note, and the bank, as Spear says, undertook orally to share with Spear any loss he might have by reason of his being security for debtors,—that is, the promise of each was a collateral undertaking to be answerable for the debt of Thompson & McLean, and Johnson, Thompson & McLean, if Thompson & McLean should make default in payment. Such a contract is within the statute.

It is urged that the promise of the bank president was founded upon a new and independent consideration moving from appellee to appellant by the agreement that each should share the loss jointly sustained, and each should delay action until a certain fixed time, and then to take action only upon consultation with the other, and that this promise was for the mutual advantage of the contracting parties. The promise to share the loss is the material thing promised, and that promise was collateral to the debt of Thompson & McLean to each of the parties, and if it be admitted that the consideration of the promise of one to the other is sufficient as a consideration, still the requirement of the statute that the agreement shall be in writing is not complied with, and the promise would still be void. *Eddy* v. *Roberts, supra.*

From a consideration of the record we must affirm the judgment of the Appellate Court.

*Judgment affirmed.*