# William P. Early, Appellee, v. George Cassens, Appellant.

1. PRINCIPAL AND SURETY, § 8*—*right of sureties to vary liability.* Sureties may by special contract vary their liabilities, as to themselves, from that which the law ordinarily implies, and it is competent, as between the sureties, to prove such special agreement by parol evidence.

2. PRINCIPAL AND SURETY, § 1*—*when question for jury whether plaintiff made payment as surety for defendant.* In an action to recover money paid where the plaintiff claimed that he acted as surety for the defendant, and the evidence was in conflict, the question whether the promise sued on was original or collateral was for the jury.

3. FRAUDS, STATUTE OF, § 2*—*independent and collateral promises.* In an action to recover money paid out where the plaintiff claimed that he signed a note of a corporation at the request and with the verbal assurance of the defendant, who also signed, that the plaintiff would not be required to pay any part of the note, if the agreement was independent, it was not within the statute of frauds, but if it was collateral to the agreement of the other person so that it was a promise to answer for the debt or default of that other, it was within the statute.

4. FRAUDS, STATUTE OF, § 2*—*when promise not collateral.* Where a plaintiff signed a note of a corporation at the request of a defendant and in reliance on his verbal assurance that he would not be required to pay any part of the note, the promise of such defendant was not a collateral undertaking, as it is the rule under the statute of frauds that there must be an existing debt or obligation at the time that the promise is made, and such debt must be of the person for whom the promise is made to the person to whom it is made.

5. ASSUMPSIT, § 23*—*right to recover under the common counts.* When a contract sued upon has been fully performed on the plaintiff's part, and nothing remains to be done under it except for the defendant to pay whatever money is due from him, the plaintiff may recover under the common counts.

6. ASSUMPSIT, § 87*—*what evidence admissible.* In an action under the common counts, where the plaintiff alleged that he signed notes as surety for a corporation on the promise of another surety that he would not be required to pay such notes, it was not error to admit the notes in evidence, as they were competent to

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

prove the promise sued on and to show performance by the plaintiff.

7. PRINCIPAL AND SURETY, § 2*—*what is sufficient consideration for contract between sureties.* In an action to recover from a defendant surety on notes, where the plaintiff also signed such notes as surety in reliance on the statements of the defendant that the notes would be paid, and no loss would occur, the fact that the transaction was of advantage to the defendant formed a sufficient consideration for the promise.

8. EVIDENCE, § 350*—*admissibility of parol to show collateral contract.* Parol evidence is admissible to prove that when sureties signed a note of a corporation, an agreement was entered into between two of such sureties whereby one was signing as surety for the other only.

Appeal from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed March 25, 1920.

J. F. EECK, for appellant.

TERRY, GUELTIG & POWELL, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, William P. Early, sued appellant, George Cassens on the common counts in assumpsit to recover money paid out by appellee, as he claims, as surety for appellant. In 1907 the Cassens Manufacturing Company was organized with a capital stock of $250,000 to manufacture and place on the market a certain eaves trough or gutter patented by appellant. The capital stock was divided into 250 shares of the par value of $100 each. Appellant retained 125 shares for his patent and 42 shares remained in the treasury unsold. The other 83 shares were held by various persons, appellee owning 5 of them. Appellant was president and manager and for a time, at least, conducted and practically controlled the business of the company as he saw fit. The company did not prosper

and it became necessary to raise more money. Appellant appears to have surrendered or transferred to his brother, 75 of his 125 shares to be sold, together with that retained in the treasury, for the benefit of the corporation, but there seems to have been no market for the stock, and so far as the record shows the company realized nothing from these shares. The sum of $3,500 was borrowed from the First National Bank of Edwardsville on two notes, one for $2,500 and one for $1,000. These notes were signed by the Cassens Manufacturing Company, by its officers and also by some of the stockholders, individually, including appellant and appellee. They were renewed from time to time, or at least were renewed on November 4, 1913. When these notes became due, the bank insisted upon payment, and on January 22, 1916, the $2,500 note was paid by the stockholders who had signed it, appellee paying $372.50 as his share. On that date the $1,000 note was renewed. One of the stockholders, W. G. Kriege, who had signed previous notes, insisted on winding up the corporation and refused to sign the notes. After the renewal of the $1,000 note on January 22, 1916, the business of the corporation was closed up and its property and effects were sold. The net proceeds of this sale, amounting to $595.75, were applied to the payment of the $1,000 note and interest, leaving a balance of $504.25 unpaid. This balance was paid by four of the five signers of the note, appellee paying $201.70, being two-fifths of the note, and appellant paying nothing. This suit was brought to recover these two payments of $372.50 and $201.70 made by appellee, with interest thereon. Upon trial before a jury a verdict for $643.15 was returned in favor of appellee, and appellant by this appeal seeks to reverse the judgment rendered on that verdict.

It is the contention of appellee that when he signed the notes he objected to obligating himself to that amount as he owned only 5 shares of the stock, while

appellant was the principal stockholder to such an extent that a loan to the company was practically a loan to him; that appellee then insisted that the affairs of the company be wound up and its effects sold and applied to its debts, and that appellant, then, expressly agreed and promised that if appellee and others of the stockholders would sign the notes, none of them should be required to pay any part of them. Appellee testified on the trial that appellant at that time said: "I will sacrifice every bit of property or money that I have, before you gentlemen shall be called upon to pay a cent of this money," and that it was only with this assurance and understanding that he consented to and did sign the notes; that he signed only as surety for appellant, even though Cassens Manufacturing Company was the principal maker. It was upon such claimed agreement and promise that appellee relied to recover from the appellant the sums paid by him on the notes.

Appellant denies he made the above statement or gave appellee any such assurance or made any such promise, and takes the position that Cassens Manufacturing Company was the principal maker of the notes; that the other signers, including himself, were sureties thereon, and that no other relation of the signers can be shown by parol. Appellant also claims that even if he did make the assurance and promise claimed, it was in effect a collateral agreement to answer for the debt, default or miscarriage of another, and therefore within the statute of frauds, and void because not in writing; that such agreement, if made, was a special contract and no recovery could be had thereon under the common counts, and that it was error to admit the notes in evidence under the common counts. The evidence in this case clearly establishes the fact that appellant made the verbal assurance or agreement as contended by appellee, before appellee consented to and did sign the notes. Appellee and three of the

other signers of the notes, who are not parties to this suit, so testified and the only evidence to the contrary is that of appellant. Appellee also testified that he signed the notes only as surety for appellant.

It is well established that sureties may by special contract vary their liabilities, as to themselves, from that which the law ordinarily implies, as for instance, one surety may agree to indemnify another or one surety may sign as surety for another, who is himself surety for the principal maker, and that it is competent, as between the sureties to prove such special agreement by parol evidence. *Paul v. Berry,* 78 Ill. 158; *Robertson v. Deatherage,* 82 Ill. 511; *McDavid v. McLean,* 202 Ill. 354; *Myers v. Fry,* 18 Ill. App. 74. The determination of this case is dependent on whether the agreement sued on is an original and independent one, in which case it is not within the statute, or collateral to the agreement of another person, whereby the promise is to answer for the debt or default of that other which would cause it to fall within the statute. *Spear v. Farmers' & Mechanics' Bank,* 156 Ill. 555. Appellant owned more of the outstanding stock of the corporation than all the other stockholders. The proof shows he was most active in securing the loan and insisted upon a renewal of the notes. He called upon appellee at his office and there urged him to sign the notes, and appellee testified he was induced, by the agreement of appellant above mentioned, to waive his right to insist upon the closing up of affairs of the company and the sale of its property while there was sufficient to pay its indebtedness. The continuance of the business was to the advantage of appellant more than any one. If, as appellee testified, he refused to sign the notes until appellant promised to protect him from any liability, and then he signed as surety for appellant, it could not be questioned that appellant's promise was an original and independent undertaking between him and appellee, and not within the statute

of frauds. Whether or not the promise sued on was original or collateral was a question to be determined by the jury from all the circumstances of the case, under the instructions of the court. *Lusk v. Throop*, 189 Ill. 127. The jury found for appellee. The proof tending to show appellee signed as surety for appellant is such that even though that were the only basis for a finding that the promise sued on was an original undertaking between appellee and appellant, we would not be justified in disturbing a verdict to that effect. But conceding that appellee, in legal effect, did sign the notes as surety for Cassens Manufacturing Company, we are not inclined to hold, under the facts in proof in this case, that the promise sued on is a collateral undertaking. If the promise sued on is a collateral undertaking to answer for the debt, default or miscarriage of another person, who is that other person? Obviously such other person must be the Cassens Manufacturing Company. What, then, was the debt or obligation the Cassens Manufacturing Company then owed appellee to which the promise sued on was collateral? The Supreme Court of this State has held that "when the promise is made, there must be an existing debt." *Lusk v. Throop, supra.* Not only must there be an existing debt or obligation at the time the promise is made, but it must be a debt or obligation of the person for whom the promise is made to the person to whom it is made. "In order that the promise can be held to be within the statute, it is essential that there be a binding and subsisting obligation or liability to the promisee, to which the promise is collateral. In other words 'that the party for whom the promise has been made must be liable to the party to whom it is made' (3 Pars. on Contr. sec. 21, note p. [cases cited]). * * * In *Hargreaves v. Parsons, supra* [13 M. & W. 561], it was said by Parke, B.: 'The statute applies only to promises made to the persons to whom another is already or is to become

answerable. It must be a promise to be answerable for a debt of or a default in some duty by that other person towards the promisee.' In *Perkins v. Littlefield, supra* [5 Allen 370], Bigelow, J., said, 'It is a well-settled doctrine, that the provision in the statute is applicable only to promises made to persons to whom another is answerable.' " *Resseter v. Waterman,* 151 Ill. 169.

Appellee contends appellant made his promise when the notes were first given, as well as when they were renewed, and we think the proof sustains this contention. No express agreement whatever was shown at that or any other time between Cassens Manufacturing Company and appellee. The debt, obligation or duty the company then owed appellee was only that of a principal maker of a note to his surety before default. Was this sufficient obligation to bring appellant's promise within the statute? The Supreme Court in the case of *Resseter v. Waterman, supra,* following the above-quoted language, also said:

"The principle under consideration is illustrated by Mr. Bishop (Law of Contr., sec. 1265), as follows: 'One's promise to another to see him harmless, should he become surety for a third person, or should he do anything else, is a mere arrangement between promisor and promisee. It is to pay what the one to whom it is made may become liable for,—not "another's" debt, but his. Therefore it is not within the statute, and is valid though oral.   *   *   *   On principle, this question is determinable by a very simple test. You promise James, that, if he puts his name, as surety for John, on a bond running to Richard, you will hold him harmless; he does it; John makes default. All agree that, in this case, John is the "another" of the statute. But Richard, to whom the debt is due, cannot sue you; John failing, his claim over is alone on James. Aside from difficulties as to the form of action, your liability begins only when James has paid him. There remains now for adjustment only what you had promised to James, who is not "another," but the promisee

himself—the debt is yours to him, and there is nothing going out from you to any third person. Hence, the case is not within the statute.' ''

Under these authorities we must hold that even though appellee be considered as surety for Cassens Manufacturing Company, such company had not made default in payment, and it owed appellee no debt or obligation, capable of enforcement, at the time the promise sued on was made, to which appellant's promise could be collateral, and that therefore it was an original and independent undertaking and not within the statute. In reaching this conclusion we are not unmindful of the fact that in *Brand v. Whelan,* 18 Ill. App. 190, the court after stating that, ''The question whether a contract of indemnity against the liability of a surety or a guarantor for a third person is within the Statute of Frauds has been the subject of very great and perplexing discussions both in this country and in England, and very different conclusions have been reached by different courts,'' held, that such a contract is within the statute. We conclude, however, that under the proofs in this case and in accordance with the weight of the authorities recognized by the courts of this State, that even though appellee signed as surety for Cassens Manufacturing Company, that company owed no debt or obligation to appellee at the time of appellant's promise, to which such promise could have been collateral, and that appellee signed the notes at the request of appellant and extended credit solely to him, and therefore the promise sued on is not within the statute. If, as we have held, the promise sued on was an original undertaking, we must also hold that a recovery could be had thereon under the common counts. When a contract sued upon has been fully performed on the plaintiff's part, and nothing remains to be done under it except for the defendant to pay whatever money is due from him, the plaintiff may recover under the common counts. *Union El.*

*R. Co. v. Nixon,* 199 Ill. 235; *Gibson v. O'Gara Coal Co.,* 151 Ill. App. 424. It was not error to admit the notes in question in evidence in this case under the common counts. They were competent as tending to prove the promise sued on was made and to show it had been performed by plaintiff.

What has already been said disposes of the contention that there was no consideration for the promise of appellant. If the transaction was of advantage to appellant or detrimental to or to the disadvantage of appellee, it would form a sufficient consideration for the promise. *Resseter v. Waterman, supra.* It also disposes of the contention that it was error for the court to give plaintiff's second instruction, which informed the jury in substance that if the evidence showed that at the time the notes introduced in evidence were executed, a verbal agreement was made between plaintiff and defendant that the plaintiff was signing as security for defendant only, then the plaintiff could recover the money he had been compelled to pay out, together with interest. Under the authorities cited herein, it was competent to prove such an agreement by parol evidence and the instruction correctly stated the law.

The judgment of the trial court will be affirmed.

*Affirmed.*